588 A.2d 575

**Stephen S. BRODY, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (PENNSYLVANIA PUBLIC UTILITY COMMISSION), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 9, 1990.

Decided March 18, 1991.

458

Thomas F. McDevitt, Thomas F. McDevitt, P.C., Philadelphia, for petitioner.

Louis J. DeLucca, Jr., Post & Schell, P.C., Philadelphia, for respondent.

Before PALLADINO and BYER, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

Stephen S. Brody (Claimant) seeks review of the order of the Workmen's Compensation Appeal Board (Board) which affirmed the referee's denial of his claim petition pursuant to The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031. Our scope of review, of course, requires us to affirm unless we find any necessary finding of fact unsupported by substantial competent evidence, an error of law or a violation of Claimant's constitutional rights. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America),* 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988). Having so reviewed the record and relevant law, we will affirm.

Relevant to our disposition are the following findings of fact:

1. On or about January 3, 1986, a Claim Petition was filed on behalf of the Claimant, Stephen S. Brody, alleging in pertinent part that he suffered a myocardial infarction [heart attack] and/or aggravation of a prior heart condition ... from the stress and strain of his employment with the Defendant, the Public Utility Commission of the Commonwealth of Pennsylvania.

. . . .

4. After informing William Bower, the Defendant's personnel director, on May 20, 1983 of his intention to retire, the Claimant left the Defendant's employ on or about June 1, 1983....

5. The Referee specifically finds that in early May 1983, the Claimant specifically notified Commissioner Johnson, a member of the Defendant Public Utility Commission, that he was retiring due to stress and chest pain related to his position.

6. The Claimant testified and the Referee so finds that he had a pre-existing heart condition dating back to approximately 1965 and that the Claimant's brother and sister suffered from heart disease.

7. In support of the Petition, the Claimant offered the deposition of Dr. Harry Shubin, a physician with a specialty in cardiovasculor [sic] pulmonary diseases.

8. ... Dr. Shubin offered a diagnosis of 'diseased' cordonary [sic] arteries, coronary insufficiency, and status post two myocardial infarctions.

9. Dr. Shubin opined that as a result of exposure to physical stress in the form of working long hours, and emotional stress of attempting to perform a job without adequate personnel, the Claimant required hospitalization in August, 1983 and subsequently thereafter for multiple myocardial infarctions. The severity of the Claimant's symptomatology, concluded Dr. Shubin, precludes the performance of 'any job with any stress' (N.T., p. 22).

10. In opposition thereto, the Defendant offered the deposition of Dr. Gerald DeVaughn, a physician certified by the American Board of Internal Medicine with a specialty in cardiology.

. . . .

12. Dr. DeVaughn concluded that although Claimant's occupation was 'stressful', there was no evidence to establish 'a temporal relationship between an acute and stressful event and his myocoardial [sic] infarction'. (N.T., p. 16). As such, Dr. DeVaughn concluded 'with a high degree of medical certainty' (N.T., p. 11) that Claimant's cardiac pathology was related to his high level of serum cholesterol and family pre-disposition to cardiac events.

13. Although carefully considered, the opinion of Dr. Shubin, a non treating [sic] physician who saw the Claimant 39 months following his retirement, is rejected as not persuasive or credible.

14. The Referee accepts the opinion of Dr. DeVaughn that Claimant's increasingly servere [sic] cardiovascular pathology and myocardial infarctions which required multiple hospitalizations beginning in August, 1983 was caused, aggravated or precipitated by the Claimant's high

level of serum cholesterol and family pre-disposition to cardiac events. A more complete discussion of this issue is undertaken below.[1]

. . . .

16. The Referee accepts Claimant's testimony that he experienced chest pain and discomfort in 1983 which now precluded his return to the Defendant's employ as of August 1983. The Referee finds however, that the Claimant simply has not established that he experienced an injury or an aggravation of a pre-existing condition within

1. Relevant excerpts of this discussion are as follows:

In *General Electric Co. v. W.C.A.B. (Woomer)* 79 Pa.Commonwealth Ct. 91, 468 A.2d 885 (1983), Commonwealth Court affirmed a Referee award of disability for a claimant suffering a myocardial infarction at home some 33 hours following the last hour of work. However, in *Marincov v. W.C.A.B. (City of Washington),* [71] Pa.Commonwealth Ct. [194], 454 A.2d 670 (1983), the Referee's finding that the claimant's death from a myocardial infarction following a two week vacation from work was not caused by or related to employment was affirmed by the Court. As noted in General Electric Co., the passage of time [between the completion of work and the occurrence of a heart attack] is 'a factor for the Referee to consider under section 301(c) [of the Act, 77 P.S. § 411]; . . . . . Thus, based upon competent evidence, a referee could find that a stress heart attack was too remote in time and place from the victim's work to have arisen in the cause [sic] of, and be related to, his employment'.

. . . .

In the matter at bar, Stephen S. Brody left the Defendant's employ on or about June 1, 1983, following a period of part-time work amounting to approximately 14 days from March 16, 1983 thru [sic] May, 1983.

As noted by Dr. Shubin, the Claimant was not admitted to Rolling Hill and Albert Einstein Hospitals until August 23rd, and 25th, 1983, or almost thru [sic] (3) months following his retirement.

No medical records were presented establishing that Claimant was treated for chest pain or discomfort during the months prior to his retirement thru [sic] August 22, 1983, . . . nor is there any medical records which establish that the Claimant was ever treated for stress.

. . . .

There is no written documentation that following his retirement on or about June 1, 1983, thru [sic] August 22, 1983, the Claimant remained emotionally or physically affected by his prior employment, or that he was not otherwise enjoying his retirement. Referee's decision, pp. 5–6.

the meaning of the Act arising in the course of his employment with the Defendant, and related thereto. Findings of Fact Nos. 1, 4–10, 12–14, 16 (footnote added).

 It goes without saying that cardiovascular-related injuries are compensable under the Act if they (1) arise in the course of employment and (2) are related thereto. *Haney v. Workmen's Compensation Appeal Board*, 65 Pa.Commonwealth Ct. 461, 442 A.2d 1223 (1982); Section 301(c) of the Act, 77 P.S. § 411(1). Claimant, as the party seeking benefits, had the burden of establishing compensability which required Claimant to establish a causal connection between his cardiac events and his employment. *Id.*

 While Claimant presented medical evidence which, if accepted, could have supported a finding of causation, the referee found Employer's conflicting medical evidence persuasive and, in accordance therewith, concluded that Claimant failed to establish a causal connection between his cardiac events and his employment. Questions of evidentiary weight and credibility as well as the resolution of conflicting medical testimony are, of course, for the referee as ultimate factfinder in workers' compensation cases; not this Court. *Marincov v. Workmen's Compensation Appeal Board (City of Washington)*, 71 Pa.Commonwealth Ct. 194, 454 A.2d 670 (1983).

· Claimant contends, however, that the referee's conclusion is not supported by substantial competent evidence because Dr. DeVaughn's opinion, upon which the referee relied, is (1) equivocal[2] as to the crucial issue of causation and (2) contrary to case law. We find neither contention persuasive.

 In Dr. DeVaughn's opinion, coronary artery disease caused Claimant's myocardial infarction. Dr. DeVaughn's Deposition, pp. 13–14. Dr. DeVaughn testified that while

**2.** Whether medical testimony is or is not equivocal is a conclusion of law fully reviewable by this Court. *Lewis v. Workmen's Compensation Appeal Board*, 508 Pa. 360, 498 A.2d 800 (1985). Medical testimony that is less than positive or based upon mere possibilities is equivocal and, as such, constitutes incompetent evidence. *Id.*

physicians do not know exactly what causes coronary artery disease, they do know that certain people are at risk, including people with high cholesterol and a family history of cardiac events, *Id.*, p. 14, and that the presence of these risk factors increases an individual's likelihood to develop coronary artery disease and experience cardiac events, including myocardial infarction. *Id.* pp. 20–21. According to Dr. DeVaughn, Claimant's history of high cholesterol and family predisposition to cardiac events led to Claimant's myocardial infarction. *Id.*, p. 14.

In discussing the role that work-related stress played, Dr. DeVaughn testified that stress was circumstantial to Claimant's cardiac disease, *Id.*, p. 10, and that he would not rule it out as a minor risk factor in Claimant's case. *Id.*, p. 18. As to the role of stress in attempting to ascertain the progression of coronary artery disease, Dr. DeVaughn testified that "stress has very, very low predictability" in this regard and "is less of a risk factor for a subsequent myocardial infarction than [Claimant's] history of [high cholesterol] and his family history of cardiac events." *Id.*, pp. 17–18.

While Dr. DeVaughn admitted that stress can exacerbate angina and that a severe episode of angina can lead to a myocardial infarction, he stated that, based upon his experience, the events leading to myocardial infarction usually directly precede it, but that Claimant failed to show him any evidence that work-related activity directly preceded his myocardial infarction or any of the events Claimant reported or which were reported in Claimant's medical record. *Id.*, p. 10. Accordingly, in his opinion, the temporal relationship between Claimant's work-related activities and his cardiac events did not substantiate cause and effect. *Id.*, p. 11.

Claimant contends that Dr. DeVaughn's testimony is equivocal because it is inconsistent, contradictory or speculative. In support, Claimant points out that Dr. DeVaughn

(1) admitted that the exact cause(s) of coronary artery disease are unknown but stated that certain people are at risk;

(2) failed to read Claimant's testimony;

(3) acknowledged that Claimant's employment was stressful and that stress can exacerbate angina and precipitate a myocardial infarction, but relegated stress to the category of a minor risk factor and testified that stress was circumstantial to Claimant's heart disease;

(4) testified that Claimant's coronary artery disease was "more likely" attributable to high cholesterol and family history;

(5) admitted that it is important to know how high the cholesterol level is to rate it as a risk factor, but that he had no such measurement of Claimant's cholesterol level, relying instead on Claimant's word that it was "high"; and,

(6) stated that a family history of cardiac events was a major risk factor while admitting that such family history does not necessarily lead to heart disease.

■ Quite clearly, medical witnesses can only be expected to testify within the known parameters of medical science. The presence of an unknown medical component, such as the exact cause(s) of coronary artery disease here, relates to the weight to be accorded the medical testimony in question, which, as previously noted, is for the referee, *Marincov*, and not to its competency. Moreover, Dr. DeVaughn's testimony admitting lack of medical knowledge as to the exact cause of coronary artery disease in no way negates, or is inconsistent with, his testimony delineating known risk factors because causes and risk factors are not synonymous. Inasmuch as these two subjects are not synonymous, it likewise cannot be said that the admission here recants Dr. DeVaughn's testimony as to risk factors.

While Dr. DeVaughn testified that the *cause* of Claimant's coronary artery disease was "more than likely" high cholesterol and family predisposition and while this language might be insufficiently certain, Claimant conveniently disregards Dr. DeVaughn's other testimony, as noted above, that the exact cause(s) of coronary artery disease is unknown. Because the exact cause(s) is unknown, Dr. DeVaughn could not have testified with any greater certain-

ty. It is interesting to note that, based upon Dr. De-Vaughn's testimony, Claimant could not have established work-related stress as the cause of his cardiac condition within a reasonable degree of medical certainty, thereby making this an issue incapable of sufficient medical ascertainment.

As to the medically known component, risk factors, Dr. DeVaughn's testimony was, without a doubt, sufficiently certain. Contrary to Claimant's assertion, the record demonstrates that medical documentation reviewed by Dr. De-Vaughn recorded Claimant's serum cholesterol at 305 and characterized it as type four, Dr. DeVaughn's Deposition, pp. 19–20, the significance of which Dr. DeVaughn testified to as follows: "an absolute serum cholesterol of 305 is considered extremely high [sic] in good correlation with subsequent cardiac event" and "type four . . . is the type . . . predicted to have a subsequently [sic] cardiac event." *Id.*, p. 20.

Furthermore, Dr. DeVaughn's admission that family predisposition to cardiac events may not necessarily lead to heart disease in a particular family member does not render inconsistent, negate or otherwise adversely affect his testimony that such predisposition is recognized as a major risk factor in general. In any event, such an admission relates to the weight to be accorded Dr. DeVaughn's testimony and not to its competency.

Dr. DeVaughn's admitted failure to read Claimant's testimony, Dr. DeVaughn's Deposition, p. 18, likewise relates to evidentiary weight; not competency. *Marincov.* Moreover, Dr. DeVaughn did interview Claimant at the time of his medical examination, *Id.*, p. 8, and presumably elicited information similar to that testified to by Claimant.

Regarding Dr. DeVaughn's acknowledgment that stress can contribute to the worsening of pre-existing heart disease, such acknowledgment does not render equivocal his opinion that stress did not play a substantial role in Claimant's case. As previously noted, Dr. DeVaughn explained that stress is less of a risk factor than Claimant's high

cholesterol and family predisposition and that there was no evidence of a temporal relationship between Claimant's work activities and his cardiac events so as to substantiate cause and effect.

■ Nor, in our opinion, is Dr. DeVaughn's testimony contrary to Pennsylvania workers' compensation law, as Claimant additionally contends. While it is indeed true that the law recognizes the potentiality of employment stress to aggravate heart disease and precipitate heart attacks, *Krawchuk v. Philadelphia Electric Co.*, 497 Pa. 115, 439 A.2d 627 (1981), review of Dr. DeVaughn's testimony demonstrates that he recognized this potentiality, but could not find a sufficiently convincing causal connection between Claimant's work activities and his cardiac events. Moreover, as noted by the Board, *Krawchuk* does not purport to prohibit a physician from giving greater emphasis to factors other than stress in determining causation in a particular case.

■ We likewise reject Claimant's final argument that the referee improperly relied upon *Marincov*, a case involving a "passage-of-time" factor which Claimant contends is absent here. While the referee discussed *Marincov* as well as other cases, his findings and conclusions were obviously based on Dr. DeVaughn's testimony; not on any particular case. In any event, the referee's recitation of case law was correct and the cases cited in his discussion were relevant inasmuch as Dr. DeVaughn testified to the absence of a temporal relationship between Claimant's work activities and his cardiac events which certainly can be construed to indicate a "passage-of-time" factor.

Having found the denial of compensation benefits supported by substantial competent evidence and no error of law committed, we will affirm the Board's order.

## ORDER

AND NOW, this 18th day of March, 1991, the order of the Workmen's Compensation Appeal Board, dated June 22, 1990, at No. A89–1492, is affirmed.