**DEPARTMENT OF CORRECTIONS, SCI–RETREAT, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (RICHARDSON), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 17, 2001.
Decided Nov. 16, 2001.

Terrence E. Dempsey, Scranton, for petitioner.

No appearance entered for respondent.

Before: PELLEGRINI, Judge, FRIEDMAN, Judge, and FLAHERTY, Senior Judge.

Opinion by Senior Judge FLAHERTY.

The Pennsylvania Department of Corrections (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) which affirmed the decision of a Workers' Compensation Judge (WCJ) granting the Claim Petition filed by Janet Richardson (Claimant) for a closed period. We affirm.

Claimant filed a Claim Petition alleging that she sustained a "Cervical/Neck injury with left side radiculopathy" on September 13, 1995 while working for Employer. Claimant alleges that this injury occurred "[w]hile in isolation area with co-employees, I was struck by a combative inmate when we were trying to restrain and sedate, per Doctor's Orders. After an unsuccessful attempt at returning to work from 9–15–95 to 11–1–95, I became totally disabled from work at SCI as of 11–2–95. As a direct and sole result of my inability to return to work at SCI, I involuntarily resigned from SCI by letter dated 11–5–95. Solely because of my work-related injury and further risks of injury associated with employment at SCI in part due to nature of work and medications taken at time." Employer filed an Answer denying the allegations in Claimant's Claim Petition. Employer also filed a Joinder Petition alleging that any disability that Claimant suffers from is the result of an injury she suffered while employed by Home Health Care Corporation of America (Home Health Care). Home Health Care filed an Answer denying the allegations in Employer's Joinder Petition.

At the hearings before the WCJ on June 11, 1996, Claimant testified that she began working for Employer at the Hunlock Creek State Correctional Institution Retreat in June of 1995 as a Licensed Practical Nurse. On September 13, 1995, one of the inmates became combative. When Claimant and another nurse tried to restrain the inmate, he hit Claimant's left arm and left hand and knocked her backwards. This injury caused Claimant to experience pain in her left shoulder and arm. Claimant returned to work but continued to suffer from pain. On October 17, 1995, Claimant submitted a resignation letter stating that:

I am resigning my full time position of 2:00 P.M.—10:00 P.M. as Pharmacy Nurse, effective November 5, 1995 due to circumstances beyond my control with my minor children at home.

I am interested in a PRN (position), If/when one becomes available.

(Employer's Exhibit No. 3). During her testimony, Claimant explained that she left work "because I was not sleeping, I was not functioning at home, and I couldn't take care of my family, the kids, and work there....". Claimant did not mention anything about work in her resignation letter because "I didn't want it on my permanent record .... [and] my husband works there, if I put down how messed up that department was, and how bad things really were when I left, you think they wouldn't take it out on him? He works there yet, I know how the jail operates." (N.T. 6/11/96, p. 13). Claimant further explained that she could not sleep because of the pain as a result of the work-injury. When asked if she ever had any problems with the left side of her arm or her shoulder, Claimant replied that she had not. She also testified that she never received any treatment for left shoulder or left arm problems. (N.T. 6/11/96, pp. 22–23).

Claimant was also asked if she had suffered any previous work-related injuries. Claimant replied that "I had fallen down the steps when I worked for Home Health Care, and I had injured my tailbone, and that would have been in two years, like—it would have been like two years before I started there...." (N.T. 6/11/96, p. 24). Claimant received compensation benefits for this injury and returned to work.

Claimant also testified by deposition on December 9, 1997. During this deposition Employer confronted Claimant with evidence that she had, in fact, received treatment for her left arm. Claimant testified that her previous statements were correct and explained that she previously injured her thoracic region when she worked for Home Health Care. However, during this testimony Claimant stated that this injury occurred in April of 1995, which was only two months, rather than two years, before she began working for Employer. Claimant explained that "I was wrong on the dates. I was so nervous in that hearing, plus I've had some memory lapse. There was a period of time that I can't remember surrounding the injury at the jail." (N.T. 12/09/97, p. 11). Claimant treated with a chiropractor for this injury and indicated on a physical assessment form dated May 30, 1995, which was five days before she began working for Employer, that she suffered from pain in her left shoulder radiating down her left arm and left hand and that this pain was getting worse. The physical assessment form also indicates that this injury was caused by an accident that occurred on April 28, 1995, which was when she worked for Home Health Care (N.T. 12/09/97, Exhibit 1). Claimant also indicated on a "Work/Comp Questionnaire" dated May 31, 1995 that she suffers from neck pain that radiates into her left arm (N.T. 12/09/97, Exhibit 2). The WCJ accepted "as credible and persuasive claimant's testimony regarding the events which occurred on September 13, 1995 when she was dealing with an inmate while performing her duties" for Employer. (Finding of Fact No. 11).

Claimant also presented the testimony of David J. Ball, D.O., who began treating her in January of 1996. Dr. Ball testified that Claimant sustained an injury to her left shoulder and "had a chronic condition as a result of this injury and still this day has a chronic condition in her neck and shoulder area but this has resolved significantly" as a result of the incident that occurred at work on September 13, 1995 (N.T. 9/26/96, p. 11). He also concluded that, because of this injury, Claimant was not capable of returning to her job with Employer. However, after examining Claimant on August 19, 1996, Dr. Ball determined that Claimant was capable of

returning to work. Apparently, at the time of his deposition Dr. Ball was not aware of Claimant's previous injury while working for Home Health Care. The WCJ accepted the testimony of Dr. Ball as credible and persuasive regarding Claimant's disability.

Home Health Care presented the testimony of Michael Kraynick, M.D., who examined Claimant on June 15, 1998. Claimant informed Dr. Kraynick that she had previously suffered an injury while working for Home Health Care on April 28, 1995 and that she suffered another injury while working for Employer on September 13, 1995. Claimant told Dr. Kraynick that, when the inmate struck her left elbow and pushed it backwards, she felt a pop in the back of her left shoulder and felt pain. Claimant told Dr. Kraynick that she never had any problems with her shoulder prior to April 28, 1995. However, medical records that Dr. Kraynick received after the examination showed that this was not true. Dr. Kraynick stated that Claimant "had apparently been seen at the Berwick Hospital .... on May 21 st 1989. She at that time had an injury to her left shoulder after a fall." (N.T. 12/29/99, p. 22). However, after reviewing Claimant's entire medical history and the deposition testimony, Dr. Kraynick concluded that Claimant aggravated her pre-existing shoulder injury on September 13, 1995 and explained that "she then told me that she had a pop in her shoulder when the inmate struck her left elbow. And, in my opinion, this has to be a new injury." (N.T. 12/29/99, pp. 29–30). However, Dr. Kraynick concluded that, at the time of his examination, Claimant had fully recovered from this injury. The WCJ accepted the testimony of Dr. Kraynick as credible and persuasive.

Employer presented the testimony of Thomas Byron, M.D., who examined Claimant on March 28, 1996. Dr. Byron concluded that, at the time of his exam, Claimant was capable of performing her pre-injury job. (N.T. 2/11/97, p. 15).

■ By decision and order dated October 5, 1999, the WCJ concluded that Claimant sustained an aggravation rather than a recurrence of her pre-existing injury on September 13, 1995 while working for Employer and that as of June 15, 1998 she had fully recovered from this injury. Accordingly, the WCJ granted Claimant's Claim Petition for a closed period, terminated her benefits on June 15, 1998 and dismissed Employer's Joinder Petition against Home Health Care. Employer appealed to the Board, which affirmed the decision of the WCJ. This appeal followed.[1]

■ Employer argues that the decision of the WCJ is not supported by the evidence and must be reversed because: 1) the WCJ erred by finding that Claimant was partially disabled after August 19, 1996 because her treating physician, Dr. Ball, testified that she could return to work after that date; 2) pursuant to *Newcomer v. Workmen's Compensation Appeal Board*, 547 Pa. 639, 692 A.2d 1062 (1997), the WCJ erred by relying on the testimony of Dr. Ball because he was provided with a false medical history; and 3) the WCJ erred by accepting as credible the testimony of Claimant because she was not truthful about her prior left shoulder injuries.

1. This court's appellate review over an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *Republic Steel Corp. v. Workmen's Compensation Appeal Board (Petrisek)*, 537 Pa. 32, 640 A.2d 1266 (1994).

■ Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152 (Pa.Cmwlth.1998). In performing a substantial evidence analysis, this court must view the evidence in a light most favorable to the party who prevailed before the factfinder. *Id.* Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party. *Id.* Furthermore, in a substantial evidence analysis where both parties present evidence, it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the WCJ; Rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding. *Id.* It is solely for the WCJ, as the factfinder, to assess credibility and to resolve conflicts in the evidence. In addition, it is solely for the WCJ, as the factfinder, to determine what weight to give to any evidence. *Id.* As such, the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted. *Id.* It is with these principles in mind that we consider this challenge.

■ Pursuant to *Newcomer*, the testimony of a medical expert who bases his opinion upon a false medical history cannot be relied upon by a workers' compensation judge to award compensation benefits. Employer is correct that Dr. Ball was not aware of Claimant's entire medical history because Claimant did not inform him of her prior injury that occurred while she was working for Home Health Care. Employer is also correct that Dr. Ball testified that Claimant could return to work after August 19, 1996. However, in granting Claimant benefits, the WCJ relied on the testimony of Dr. Kraynick who, despite Claimant's lack of candor, was aware of Claimant's entire medical history at the time he made his diagnosis that Claimant sustained an aggravation, or new injury, while working for Employer on September 13, 1995 and that she did not recover from this injury until June 14, 1998.[2] Because the truth regarding Claimant's prior injuries was revealed at the time of Dr. Kraynick's testimony, *Newcomer* does not bar the WCJ from relying on his testimony as the basis for granting Claimant's Claim Petition. Furthermore, the WCJ accepted this testimony as credible, and this Court may not overturn this credibility determination. As to Claimant's testimony, although she was not truthful regarding her prior injuries, the WCJ did specifically find that Claimant's testimony regarding the events that occurred on September 13, 1995 while she was restraining an inmate was credible. Furthermore, there is no evidence that this aspect of Claimant's testimony was untruthful. Again, we may not overturn the WCJ's decision to find the testimony of Claimant credible. Therefore, because the WCJ did not err by relying on the testimony of Dr. Kraynick and because the WCJ's decision was supported by substantial evidence, the Board

---

**2.** If an incident materially contributes to a work-related injury, a new injury, or aggravation, has occurred. Therefore, the employer at the time of the aggravation would be liable for the payment of a claimant's compensation benefits. *SKF USA, Inc. v. Workers' Compensation Appeal Board (Smalls)*, 728 A.2d 385, 388 (Pa.Cmwlth.1999). However, "if a compensable disability results directly from a prior injury but manifests itself on the occasion of an intervening incident which does not contribute materially to the disability, then the claimant has suffered a recurrence" and the employer at the time of the prior injury would be liable for the payment of a claimant's compensation benefits. *Id.*

did not err by affirming the decision of the WCJ.

Accordingly, the order of the Board is affirmed.

## *ORDER*

AND NOW, November 16, 2001, the order of the Workers' Compensation Appeal Board docketed at A99–3289 and dated April 18, 2001 is hereby AFFIRMED.