**MONTGOMERY HOSPITAL,**
Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (ARM-STRONG), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 16, 2001.

Decided March 6, 2002.

Edward R. Carpenter, Jr., Newtown, for petitioner.

Halmon L. Banks, III, Philadelphia, for respondent.

Before DOYLE, Senior Judge [1], McGINLEY, Judge, McCLOSKEY, Senior Judge.

Opinion By Senior Judge McCLOSKEY.

Montgomery Hospital (Employer) petitions for review of a determination of the Workers' Compensation Appeal Board (Board), affirming the decision of a Workers' Compensation Judge (WCJ), which granted the claim petition filed by Christopher Armstrong (Claimant). For the reasons that follow, we affirm in part, vacate and remand in part and reverse in part.

On November 10, 1998, Claimant filed a claim petition alleging that he sustained a lower back injury on September 8, 1998, while employed as a housekeeper by Employer. The petition further alleged that on that date, Claimant's injury occurred when he felt a severe pain shoot down his right leg from his lower back while he rose from the toilet after using the restroom facilities at work.

Hearings were held before a WCJ at which Claimant testified that his job duties included dusting, cleaning, wiping off counters, walls and beds, mopping, vacuuming and carrying and lifting trash bags and equipment while performing his general job responsibility of cleaning the fourth floor of the hospital. (R.R. at 7a–8a). Additionally, Claimant testified that he lifted objects weighing up to fifty pounds and pushed and pulled objects weighing between 150–200 pounds on a daily basis. (R.R. at 9a). Claimant further testified that his lower back pain began in August of 1998, while performing his housekeeping duties. Claimant did not stop working or seek medical treatment at this time since he thought the pain would subside. Moreover, Claimant testified that he informed his immediate supervisor of the progression of his back pain and his belief that it was connected to his employment responsibilities. (R.R. at 14a–15a).

Claimant explained that on the night of September 8, 1998, he felt a very severe pain shoot down his right leg from his lower back which caused him to fall to the floor while getting off the toilet at work. (R.R. at 13a). Claimant completed an injury report that night but returned to modified duty which was recommended by a physician at Employer's Corporate Health office. On September 14, 1998, the pain in his lower back and right leg had progressed until he was no longer physically able to work. (R.R. at 24a–26a). Finally, Claimant testified that he stopped treating with the Corporate Health office after they informed him that they could not help him and that he was currently treating with Dr. Scott Yarmark, D.O., since he continues to experience numbness in his right leg after standing for more than fifteen minutes. (R.R. at 30a–34a).

Claimant also presented his treating physician, Dr. Yarmark, a board-certified family physician, who began treating Claimant's lower back injury on October 10, 1998. Dr. Yarmark testified that he reviewed Claimant's MRI report which revealed anterolisthesis of L5 on S1 with mild foraminal stenosis on the right side being worse than the left. (R.R. at 190a). Dr. Yarmark explained that this occurs when one vertebra slips and becomes misaligned with the vertebra above or below it. Dr. Yarmark further testified that his physical examination of Claimant corroborated Claimant's subjective complaints and the MRI findings. (R.R. at 192a). Furthermore, Dr. Yarmark testified that he referred Claimant to a neurologist who performed an EMG which showed an L5–

1. This case was assigned to the opinion writer prior to the date when President Judge Doyle assumed the status of senior judge on January 1, 2002.

S1 radiculopathy involving the lower right extremity. (R.R. at 198a). Dr. Yarmark also referred Claimant to a neurosurgeon who believed that Claimant might have a right S1 nerve root irritation or compression. (R.R. at 200a). Finally, Dr. Yarmark opined within a reasonable degree of medical certainty that Claimant had not recovered from his work-related injury and was unable to return to his pre-injury position. (R.R. at 202a). Dr. Yarmark believed that Claimant could perform a job that was basically sedentary.

In opposition, Employer presented Kevin Mansmann, M.D., a board-certified orthopedic surgeon, who examined Claimant on March 24, 1999. Dr. Mansmann testified that he reviewed Claimant's history and medical records and performed a physical examination of Claimant. Dr. Mansmann diagnosed Claimant with a lumbosacral sprain/strain superimposed on his anterolisthesis and neural foraminal stenosis with resultant or subsequent L5 S1 right radiculopathy. (R.R. at 95a). Dr. Mansmann believed that Claimant's condition was caused by Claimant's action of rising from the toilet seat. Dr. Mansmann further testified that he believed that Claimant could return to work in a limited capacity. Dr. Mansmann would restrict Claimant from not lifting more than fifteen pounds and from extended walking or climbing. (R.R. at 98a–99a).

In addition, Employer presented Anthony McGee, Claimant's immediate supervisor, who testified that Claimant reported to him that he hurt his back while getting up off the toilet during his shift on September 8, 1998, but that Claimant never told him that he was experiencing pain prior to that date. Additionally, Mr. McGee testified that Claimant stopped working for approximately four or five days and returned to work on September 15, 1998. (R.R. at 127a–129a). Claimant was placed on modified duty for approximately one week until he stopped working completely. Mr. McGee further testified that he developed a light-duty job for Claimant in June of 1999. (R.R. at 139a). However, Claimant failed to report to work on June 24, 1999. (R.R. at 145a). Finally, Mr. McGee testified that modified duty work was still available to Claimant. (R.R. at 129a–130a).

Employer also presented Mary Ann Ragusa, Employer's workers' compensation coordinator, who testified that Claimant returned to a modified duty position on September 15, 1998, and continued in that position until September 22, 1998. (R.R. at 155a). Additionally, Ms. Ragusa testified that after reviewing a report from Dr. Mansmann, dated April 12, 1999, she contacted Mr. McGee to inquire if there was a position in his department that could accommodate Claimant's restrictions. Mr. McGee sent a job description of a modified position to Ms. Ragusa who forwarded it to Dr. Mansmann to review. Dr. Mansmann approved the modified position for Claimant with certain stipulations. Ms. Ragusa then sent a letter to Claimant and his attorney on June 16, 1999, offering the modified position.[2] Thereafter, Ms. Ragusa received a letter from Claimant's attorney stating that the offer did not allow Claimant sufficient time to attain approval from his physician and therefore, Claimant would most likely be unable to begin work on the specified start date. Furthermore, Ms. Ragusa testified that she contacted Claimant's physician, Dr. Yarmark, numerous times to obtain approval for the modified position, but never received the necessary approval. Finally, Ms. Ragusa testified that Claimant failed to report to work on June 24, 1999, and that the modi-

2. The letter provided that the starting date for the modified position was June 24, 1999.

fied position was still available. (R.R. at 156a–163a).

The WCJ made the following findings of fact:

11. The testimony of Claimant concerning the incident at work on September 8, 1998, the nature of his job duties with Defendant, and his inability to work because of his ongoing back pain, is found to be credible and persuasive, and is accepted as fact in this case. In this regard, to the extent that the testimony of Anthony McGee and the testimony of Mary Ann Ragusa are inconsistent with the testimony of Claimant, the testimony of Mr. McGee and Ms. Ragusa is specifically rejected as unpersuasive.

12. The testimony of Mary Ann Ragusa concerning the days Claimant missed from work is found credible and persuasive and accepted as fact.

13. The testimony of Dr. Scott Yarmark concerning the nature of Claimant's injury, the causal relationship between that injury and Claimant's employment with Defendant, and the extent of Claimant's disability, is found to be credible and persuasive and is accepted as fact in this case. To the extent that the testimony of Dr. Kevin Mansmann is inconsistent with the testimony of Dr. Yarmark, the testimony of Dr. Mansmann is specifically rejected as fact. In this regard, the undersigned Judge notes that Dr. Yarmark has been treating Claimant for his work injury since October 9, 1998, whereas Dr. Mansmann only saw the Claimant on one occasion, and then only for the purpose of evaluation and testimony in this case.

. . .

15. Defendant did not have a reasonable basis for the contest. In this regard, the undersigned Judge notes that Defendant's own medical witness, Dr. Kevin Mansmann, concluded that Claimant's lumbosacral strain and sprain and radiculopathy were casually related to the incident at work with Defendant on September 8, 1998, and that as a result of this injury, Claimant was unable to return to work at his job with Defendant without restrictions.

16. Based on the duration of this case, the complexity of the legal and factual issues involved, the skill and time and effort required, and the experience of Claimant's counsel, an unreasonable contest attorney fee of $7,725.00 is reasonable, at the rate of $250.00 per hour. Specifically, this case has been in litigation for more than one year, during which time Claimant's attorney required to meet with Claimant, file an answer, communicate with the opposing counsel by mail and phone, attend hearings, present Claimant's testimony, take two medical depositions and two fact witness depositions, review medical records, prepare Exhibits, and prepare proposed Findings of Fact, proposed Conclusions of Law, and a supporting brief, as set forth in Exhibit C–4.

(WCJ's Findings of Fact Nos. 11–13, 15–16, Opinion at 5–6). Thus, the WCJ granted Claimant's claim petition, concluding that Claimant met his burden of proving that he sustained work-related low back injury while in the course and scope of his employment. Additionally, the WCJ awarded Claimant counsel fees based on Employer's unreasonable contest of the petition. Employer appealed and the Board affirmed.

On appeal to this Court,[3] Employer argues that the Board erred in affirming the

3. Our scope of review in a workers' compensation appeal is limited to determining

WCJ's decision concluding that Claimant injured himself in the course and scope of his employment. Specifically, Employer asserts that Claimant was not in the course and scope of his employment at the time of his injury because he was not furthering the interests of Employer when he injured himself using the bathroom facilities. Additionally, Employer asserts that the Board erred in affirming the WCJ's decision finding that Claimant was totally disabled. Employer argues that because a modified position was available, Claimant failed to meet his burden of proving his ongoing disability. Finally, Employer argues that the Board erred in affirming the WCJ's award of counsel fees to Claimant for unreasonable contest.

■ Initially, we note that an employee's injury is compensable under Section 301(c)(1) of the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1), if the injury (1) arises in the course of employment and (2) is causally related thereto. *Brody v. Workmen's Compensation Appeal Board (Pennsylvania Public Utility Commission)*, 138 Pa. Cmwlth. 456, 588 A.2d 575 (1991). An injury may be sustained "in the course of employment" under Section 301(c)(1) of the Act in two distinct situations: (1) where the employee is injured on or off the employer's premises, while actually engaged in the furtherance of the employer's business or affairs; or (2) where the employee, although not actually engaged in the furtherance of the employer's business or affairs, (a) is on the premises occupied or under control of the employer, or upon which the employer's business or affairs are being carried on, (b) is required by the

nature of his employment to be present on the employer's premises, and (c) sustains injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon. *Hemmler v. Workmen's Compensation Appeal Board (Clarks Summit State Hospital)*, 131 Pa. Cmwlth. 24, 569 A.2d 395 (1990). Furthermore, we emphasize that the Act is remedial in nature and intended to benefit workers; therefore, the phrase "actually engaged in the furtherance of the business or affairs of the employer" under Section 301(c)(1) of the Act must be given a liberal construction to effectuate the humanitarian objective of the Act. *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995).

■ Employer first contends that Claimant's injury did not occur while Claimant was actually engaged in the furtherance of Employer's business or affairs. However, Employer's argument ignores the well established "personal comfort doctrine" which provides that an employee is considered to have sustained an injury while actually engaged in the furtherance of an employer's business or affairs where the injury occurred during inconsequential or innocent departure from work during regular working hours. *Cozza v. Workmen's Compensation Appeal Board*, 34 Pa. Cmwlth. 605, 383 A.2d 1324 (1978); *Workmen's Compensation Appeal Board v. Borough of Plum*, 20 Pa.Cmwlth. 35, 340 A.2d 637 (1975). The doctrine recognizes that, "[b]reaks which allow the employee to administer to his personal comfort better enable him to perform his job and are therefore considered to be in furtherance of employer's business." *Cozza*, 383 A.2d

whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *See* Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa. Cmwlth. 436, 550 A.2d 1364 (1988).

at 1325; *See also U.S. Airways v. Workers' Compensation Appeal Board (Dixon),* 764 A.2d 635 (Pa.Cmwlth.2000), *petition for allowance of appeal denied,* 567 Pa. 753, 788 A.2d 382 (2001).

Here, Claimant credibly testified that he injured himself during a brief break to attend to his personal needs. (R.R. at 13a; WCJ's Findings of Fact No. 11, Opinion at 5). We agree with the WCJ that Claimant's momentary departure from his work routine to use the bathroom facilities did not remove Claimant from his course of employment. Clearly, such acts fall within the personal comfort doctrine. Thus, the Board properly affirmed the WCJ's decision concluding that Claimant injured himself within the course and scope of his employment.

■ Next, Employer argues that the Board erred in affirming the WCJ's decision finding that Claimant was totally disabled. Employer asserts that because it presented evidence that a modified position within Claimant's medical restrictions was available, Claimant failed to meet his burden of proving ongoing disability. We believe that the WCJ's failure to address this issue regarding the modification/suspension of benefits and the Board's subsequent order affirming the WCJ's decision was in error.

In support of this portion of its argument, Employer relies on the Pennsylvania Supreme Court's decision in *Vista International Hotel v. Workmen's Compensation Appeal Board (Daniels),* 560 Pa. 12, 742 A.2d 649 (1999). While the specific facts surrounding the employer's appeal in *Vista* are not pertinent here, we remain cognizant of this opinion as our Supreme Court had occasion to once again set forth the parties' respective burdens in workers' compensation proceedings, stating:

While this is a proceeding on a claim petition, as opposed to one on a petition

to suspend, terminate or modify, as previously noted, the initial burden of proof associated with job availability is generally allocated to the employer in any context once a loss of earnings capacity attributable to a work-related injury is demonstrated by the claimant.... Because, unfortunately, some claims review proceedings are protracted, the status of both disability and earnings may change for a variety of reasons prior to the rendering of a decision. Workers' compensation judges are vested with the authority to render adjudications on claim petitions which incorporate aspects of modification, suspension or termination where the evidence so indicates, without the necessity of formal petitions by the employer ... Thus, in assessing the relevant burdens in a claim petition, workers' compensation judges must apprehend the stage to which the proceedings have advanced. Of particular relevance here, where the claimant has established that a work-related injury is the cause of a loss in earnings capacity (or remains so) during the time period in issue, the employer will generally be charged with the initial burden of establishing job availability for that time period.

*Vista,* 560 Pa. at 29, 742 A.2d at 658.

In opposition, Claimant cites this Court's decisions in *Hill v. Workers' Compensation Appeal Board (Ballard, Spahr, Andrews & Ingersoll),* 745 A.2d 56 (Pa. Cmwlth.1999), *petition for allowance of appeal granted,* 566 Pa. 670, 782 A.2d 550 (2000), and *Smith v. Workers' Compensation Appeal Board (Saunder's House),* 732 A.2d 18 (Pa.Cmwlth.1999), *petition for allowance of appeal denied,* 561 Pa. 682, 749 A.2d 474 (2000). In those cases, this Court held that a claimant has no obligation to an employer to pursue job referrals until his

or her injury has been recognized as compensable.

Citing *Smith*, the WCJ in the present action concluded that Claimant had no obligation to pursue a job referral as long as Employer was disputing liability. On appeal, the Board recognized the apparent conflict in the law and concluded that the opinions in both *Hill* and *Smith* were impliedly overruled by *Vista*. Additionally, the Board went on to discuss in detail the evidence presented by the parties and the credibility determinations made by the WCJ. Based on this evidence, the Board stated:

> The WCJ found Claimant credible concerning the nature of his job duties and his inability to work because of his ongoing back pain. The WCJ found the testimony of Anthony McGee and Mary Ann Ragusa not persuasive where inconsistent with the testimony of Claimant. The WCJ found Dr. Yarmark credible concerning the extent of Claimant's disability and Dr. Mansmann not credible where inconsistent with Dr. Yarmark. Although [Employer] argues that *Vista* requires Claimant to return to work in the available modified job, Claimant did return to work but was unable to continue working because of his pain, even at modified duties. Further, Dr. Yarmark credibly testified that Claimant could not return to his housekeeping position, but could only perform sedentary work. Clearly, the 'tentative task schedule' was not sedentary. Consequently, the WCJ did not err in awarding Claimant ongoing total disability benefits.

(Board Opinion at 6–7).

 At the outset, we note that on appeal from a WCJ, the scope of review of the Board is the same as that of this Court. *Moonblatt v. Workmen's Compensation Appeal Board (City of Philadelphia)*, 85 Pa.Cmwlth. 128, 481 A.2d 374 (1984); hence, while the Board in this case had every right to determine whether errors of law were committed, constitutional rights were violated or necessary findings of fact were supported by substantial evidence, it nonetheless did not have the power to make a finding as to whether the duties of the job proffered by Employer fell within Dr. Yarmark's sedentary restrictions. Instead, such a determination is left to the province of the WCJ. *See Kula v. Workers' Compensation Appeal Board (Weiman)*, 710 A.2d 1253 (Pa. Cmwlth.1998) (within the WCJ's province as fact finder to determine if a claimant could perform an available job). Further, it is solely for the WCJ, as the factfinder, to assess credibility and to resolve conflicts in the evidence. *Department of Corrections v. Workers' Compensation Appeal Board (Richardson)*, 788 A.2d 1041 (Pa. Cmwlth.2001).

In this vein, we emphasize that we agree with the Board's interpretation of *Vista*. We too are of the opinion that *Vista* effectively overrules this Court's previous decisions in *Hill* and *Smith*. In practical terms, under the rationale of *Hill* and *Smith*, we can imagine no scenario where an employer could ever satisfy its burden to warrant a modification/suspension/termination of a claimant's benefits during the course of a protracted claim proceeding. Although an employer could present evidence that it offered a claimant an available job position within his or her medical restrictions, the modification/suspension/termination would never be granted since, under *Hill* and *Smith*, a claimant has no obligation to follow through on job referrals until his or her injury has been recognized as compensable. The ramifications of these holdings are impractical, as there is no motivation for a medically-cleared claimant to accept job referrals until such time as litigation is concluded.

In light of the clarification of the state of the law in this area, we conclude that the WCJ erred by not addressing the issue of job availability. Consequently, we vacate and remand the order of the Board with the direction that it be further remanded to the WCJ for findings consistent with this opinion.[4]

Finally, Employer argues that the Board erred in affirming the WCJ's award of counsel fees to Claimant for an unreasonable contest. Section 440 of the Act, 77 P.S. § 996, provides for a successful claimant to receive attorney's fees when the employer contested liability in whole or in part. However, this Section also provides that attorney's fees may be excluded when the employer has established a reasonable basis for the contest.[5] Whether an employer's contest is reasonable is a question of law fully reviewable by this Court. *White v. Workmen's Compensation Appeal Board (Gateway Coal Co.)*, 103 Pa.Cmwlth. 397, 520 A.2d 555 (1987). Furthermore, in determining the reasonableness of an employer's contest, the primary question is whether or not the contest was brought to resolve a genuinely disputed issue or merely for purposes of harassment. *Id.* The issue of the extent of disability may provide a reasonable basis for an employer's contest. *Varghese v. Workmen's Compensation Appeal Board (M. Cardone Industries)*, 132 Pa.Cmwlth. 482, 573 A.2d 630 (1990), *petition for allowance of appeal denied*, 527 Pa. 659, 593 A.2d 429 (1990).

Under the facts presented here, we do not believe that Employer's contest was unreasonable. Admittedly, Employer's own medical witness testified that Claimant's injuries were causally related to the incident at work. Nevertheless, Employer had every reason to challenge the extent of Claimant's disability as it had made a modified position available to Claimant. Employer even presented evidence regarding this modified position, which, as we determined above, the WCJ improperly disregarded. Moreover, the record lacks any evidence indicating that Employer's contest was brought merely for purposes of harassment. Consequently, that portion of the Board's decision awarding Claimant counsel fees for an unreasonable contest is reversed.

Accordingly, the order of the Board is hereby affirmed in part, vacated and remanded in part and reversed in part.

### ORDER

AND NOW, this 6th day of March, 2002, the order of the Workers' Compensation Appeal Board (Board) is affirmed insofar as it grants the claim petition of Christopher Armstrong (Claimant). Additionally, the order of the Board is vacated insofar as it affirmed the Workers' Compensation Judge's (WCJ's) decision refusing to consider any evidence regarding job availability. This matter is remanded to the Board with the direction that it be further remanded to the WCJ for findings regarding the modified position made available to Claimant and its effect on Claimant's receipt of benefits. Finally, the order of the Board is reversed insofar as it awarded Claimant counsel fees for an unreasonable contest.

Jurisdiction relinquished.

---

4. We note that much confusion existed as to the state of law at the time of the proceedings before the WCJ. As a result, we believe that it is necessary for the WCJ, when determining whether Claimant acted in bad faith, to take into consideration the uncertainty of the law at the time the job offer was made.

5. The burden is on employer to present sufficient evidence establishing a reasonable basis for the contest. *Ricks v. Workers' Compensation Appeal Board (Parkway Corp.)*, 704 A.2d 716 (Pa.Cmwlth.1997).

CONCURRING OPINION BY Senior Judge DOYLE.

I concur in the result the majority reaches in this case. However, I do not agree with the majority's statement on page 11 of the opinion, that the Board exceeded its authority by making a factual finding concerning the issue of whether the duties of the job the Employer offered the Claimant fell within the sedentary restrictions imposed by the Claimant's physician. In my opinion, the Board merely affirmed the facts as determined by the Worker's Compensation Judge.