Karim BEY, Petitioner,

v.

WORKERS' COMPENSATION APPEAL BOARD (FORD ELECTRONICS), Respondent.

Commonwealth Court of Pennsylvania.

Submitted March 15, 2002.
Decided June 27, 2002.

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2606.77 P.S. § 996. § 996, which provides:

   Larry Pitt and Lisa A. Lesh, Philadelphia, for petitioner.

Stephen J. Harlen, Philadelphia, for respondent.

Before FRIEDMAN, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

·Karim Bey (Claimant) petitions for review of a decision of the Workers' Com-

pensation Appeal Board (Board) which reversed the decision of a Workers' Compensation Judge (WCJ) granting his Claim Petition and affirmed the decision of the WCJ denying his Penalty Petition. We vacate and remand for the reasons set forth below.

Claimant filed a Claim Petition alleging that on March 2, 1993 he sustained an "injury to lower back into right leg, pain in both shoulders and right hand" when he slipped and fell while working for Ford Electronics and Refrigeration (Employer) as an assembler/packer. Employer filed an Answer denying the allegations set forth in Claimant's Claim Petition.

At the hearings before the WCJ, Claimant testified that after his work injury he began performing a light-duty job for Employer putting lids on an "IRA Unit". However, after performing this job for three weeks he stopped because he got up one morning and could not move. Additionally, he was experiencing pain in his lower back and right leg.

In support of his Claim Petition, Claimant presented the deposition testimony of Dr. Natawadee Steinhouse, who began treating him on May 5, 1993. Dr. Steinhouse stated that a MRI of Claimant's lumbosacral spine revealed a disc protrusion and disc disease at the L4–L5 and L3–L4 levels. An X-ray also showed narrowing of the disc space and degenerative changes at the L3 L4 level. Dr. Steinhouse concluded that Claimant's injuries were caused by his March 2, 1993 work-related accident and that his work-related injuries prevented him from returning to his pre-injury job as an assembler/packer (N.T. 11/09/93, p. 43). With regard to Claimant's ability to perform the light-duty job, the following exchange took place on cross-examination:

Employer's attorney: Your testimony is that you didn't know any of the details, that you didn't know how much standing the job required or how much sitting the job required or how much lifting the job required or how much bending or squatting the job required; is that correct?

Dr. Steinhouse: That was correct.

(N.T. 11/09/03, p. 77).

In opposition to the Claim Petition, Employer presented the testimony of Bruce R. Culp, M.D., who treated Claimant from March 8, 1993 until April 1, 1993. Dr. Culp concluded that Claimant was capable of returning to his pre-injury job. He also stated that he was familiar with the physical requirements of this job because he is the contract medical provider for Employer and has personally seen this job performed (N.T. 3/16/94, pp. 16–17). Additionally, Dr. Culp told Claimant to limit his bending and to not to lift more than 25 pounds. Dr. Culp also conveyed these restrictions to Employer (N.T. 3/16/94, p. 12).

Cathy F. Fad, who is Employer's workers' compensation coordinator, testified that Employer provided Claimant with a light-duty job within the restrictions established by Dr. Culp and that Claimant performed this job until April 20, 1993. After that day, Claimant stopped coming into work, and Employer sent him a letter telling him to report to work. In response, Claimant sent Employer a copy of his denial of workers' compensation. Then, Employer requested that he either return to work or supply information regarding his disability. Claimant then requested a personal medical leave of absence. Employer informed Claimant that in order to qualify for a medical leave he would need to have his treating physician complete a certain form and then return that form to Employer within fourteen days. When Claimant did not return this form with fourteen days, Employer sent Claimant a letter stating that he must either report to work

or his employment would be terminated. Claimant did not return to work, and his employment was terminated in June of 1993 (N.T. 5/25/94, pp. 12–13).

Employer also presented the deposition testimony of Barbara Ann Shelton, M.D., who examined Claimant on September 1, 1993. Dr. Shelton watched videos of Claimant's pre-injury job and the light-duty job being performed. Dr. Shelton concluded that Claimant was physically capable both of these positions without restrictions (N.T. 8/31/94, pp. 40–41).

On October 4, 1995, the WCJ issued a decision and order granting Claimant's Claim Petition. Employer appealed to the Board, which issued a decision on April 21, 1998 affirming the WCJ's grant of Claimant's Claim Petition and remanding this case to the WCJ to allow the parties to submit evidence regarding Claimant's average weekly wage. The Board also rejected Employer's argument that the WCJ erred by failing to consider that Dr. Steinhouse was indicted by a federal grand jury for racketeering, mail fraud, unlawful drug dispensing and submitting fraudulent insurance claims. On June 18, 1998, Claimant filed a Penalty Petition alleging that Employer has failed to pay Claimant's compensation benefits. On November 17, 1998 Employer filed a Petition for Rehearing/Reargument with the Board. Employer also appealed a November 19, 1998 interim order issued by the WCJ directing Employer to pay Claimant's benefits while the remand was pending.

By decision and order dated November 10, 1999 the Board granted Employer's request for a rehearing, vacated its opinion of April 21, 1998 and vacated the WCJ's interim order. The Board also remanded this case to the WCJ based on after-acquired evidence in the nature of

Dr. Steinhouse's plea of guilty to charges of racketeering, mail fraud, inappropriate prescription of Schedule II controlled substances, fraudulent billing practices and sale of prescription drug samples. On remand, the Board instructed the WCJ to consider this evidence and make new credibility determinations and findings of facts based on those determinations.

On November 27, 2000, the WCJ issued a new decision finding that Dr. Steinhouse's guilty plea did not undermine the objective findings of the diagnostic tests and that Dr. Steinhouse's testimony that Claimant suffers from a work-related injury is substantiated by Claimant's credible testimony. The WCJ further found that "the guilty plea at issue does not translate into insufficient evidence" for Claimant to prove entitlement to benefits. Accordingly, the WCJ granted Claimant's Claim Petition. The WCJ also dismissed Claimant's Penalty Petition because Claimant failed to prove that Employer violated the Workers' Compensation Act (Act).[1] The WCJ did not address whether Claimant was capable of performing the light-duty job.

Employer filed a Notice of Appeal with the Board arguing that Dr. Steinhouse was not competent to testify and that the WCJ failed to consider evidence which showed that Dr. Steinhouse suffered from a diminished mental capacity during the period at issue in this case. Additionally, Employer argued that Dr. Steinhouse only testified that Claimant could not perform his pre-injury job and did not testify as to Claimant's ability to perform the light-duty job which he was performing on April 21, 1993 when he stopped working. Claimant also filed a Notice of Appeal with the Board arguing that WCJ erred by dismissing his Penalty Petition. Claimant argues that on

1. Act of June 2, 1915, P.L. 736, *as amended,*   77 P.S. §§ 1–1041.4; 2501–2606.

June 15, 1999 the Board issued an order revoking its earlier grant of Supersedeas and ordering payment of Claimant's benefits but then re-granted Supersedeas on June 30, 1999. Claimant argues that during this two-week period benefits were payable and that Employer violated the Act by refusing to pay him benefits.

■ On November 13, 2001, the Board issued a decision affirming the WCJ's denial of the Penalty Petition and reversing his grant of the Claim Petition. The Board reasoned that Dr. Steinhouse offered no opinion as to Claimant's ability to perform the light-duty job and Employer's workers' compensation administrator testified that this job was available to Claimant. Because Claimant failed to prove a continuing disability, the Board concluded that the WCJ erred by granting the Claim Petition. As to Claimant's Penalty Petition, the Board concluded that the WCJ did not err by finding that Claimant failed to prove a violation of the Act. This appeal followed.[2]

Claimant argues that the Board erred by finding that the WCJ committed reversible error by failing to make a finding regarding the availability of the light-duty job. In support of his argument, Claimant cites our decisions in *Smith v. Workers' Compensation Appeal Board (Saunder's House )*, 732 A.2d 18 (Pa.Cmwlth.1999), *petition for allowance of appeal denied,* 561 Pa. 682, 749 A.2d 474 (2000) and *Hill v. Workers' Compensation Appeal Board (Ballard, Spahr, Andrews and Ingersoll )*, 745 A.2d 56 (Pa.Cmwlth.1999), *petition for allowance of appeal granted,* 566 Pa. 670, 782 A.2d 550 (2001) in which this Court held that a Claimant does not have the

obligation to pursue job referrals before an injury has been acknowledged as compensable by the employer.

■ However, in *Darrall v. Workers' Compensation Appeal Board (H.J. Heinz Company )*, 792 A.2d 706 (Pa.Cmwlth.2002) and *Montgomery Hospital v. Workers' Compensation Appeal Board (Armstrong )*, 793 A.2d 182, 189 (Pa.Cmwlth. 2002), this Court held that *Smith* and *Hill* were effectively overruled by our Supreme Court in *Vista International Hotel v. Workmen's Compensation Appeal Board (Daniels )*, 560 Pa. 12, 742 A.2d 649 (1999) when it stated that:

> While this is a proceeding on a claim petition, as opposed to one on a petition to suspend, terminate or modify, as previously noted, the initial burden of proof associated with job availability is generally allocated to the employer in any context once a loss of earnings capacity attributable to a work-related injury is demonstrated by the claimant. *See supra* note 7 and accompanying text. Because, unfortunately, some claims review proceedings are protracted, the status of both disability and earnings may change for a variety of reasons prior to the rendering of a decision. **Workers' compensation judges are vested with the authority to render adjudications on claim petitions which incorporate aspects of modification, suspension or termination where the evidence so indicates, without the necessity of formal petitions by the employer.** *See generally Connor v. Workmen's Compensation Appeal Board (Super Sucker, Inc.)*, 155 Pa.Cmwlth. 102, 105, 624 A.2d 757, 758 (1993) (stating that, in proceed-

---

**2.** This court's appellate review over an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *Republic Steel Corporation v. Workmen's Compensation Appeal Board (Petrisek )*, 537 Pa. 32, 640 A.2d 1266 (1994).

ings on a claim petition, "[i]f the referee feels the evidence supports a finding of disability only for a closed period, he is free to make such a finding"), *appeal denied*, 535 Pa. 676, 636 A.2d 635 (1993). Thus, in assessing the relevant burdens in a claim proceeding, workers' compensation judges must apprehend the stage to which the proceedings have advanced. *Id.* at 28, 742 A.2d at 658 n. 11 (emphasis added). "Although the Supreme Court in *Vista* did not expressly overrule this Court's holding in *Smith*, it is evident from the Supreme Court's decision that workers' compensation judges may grant claimants benefits for a closed period of time and then suspend benefits based on the offer of a job by the employer even though the claimant's claim for workers' compensation benefits is before that workers' compensation judge only on a claim petition, as long as that job is available and within the Claimant's physical capabilities." *Darrall*, 792 A.2d at 713. In order to establish job availability, the burden of proof is on the employer to show that the claimant's condition has changed and that the claimant has been referred to a then open job that he is capable of performing. *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). The burden of proof then shifts to the claimant to demonstrate that he responded to the job offer in good faith. *Id.* If the claimant does not exercise good faith, then his benefits can be modified. *Id.*

In *Montgomery Hospital*, the WCJ relied on *Smith* in concluding that Claimant did not have the obligation to pursue a job referral because the employer had not accepted liability for Claimant's injury. On appeal, the Board recognized the conflict in this area of the law and determined that *Vista* had overruled *Smith*. The Board then analyzed the evidence presented and determined that, because the WCJ accept-

ed as credible the testimony of a medical witness who stated that Claimant could only perform sedentary work, the WCJ did not err by granting the claimant ongoing disability benefits despite the fact that the WCJ incorrectly relied on the *Smith* case.

On appeal, this Court vacated the decision of the Board and remanded this case to the WCJ because "while the Board in this case had every right to determine whether errors of law were committed, constitutional rights were violated or necessary findings of fact were supported by substantial evidence, it nonetheless did not have the power to make a finding as to whether the duties of the job proffered by Employer fell within Dr. Yarmark's sedentary restrictions. Instead, such a determination is left to the province of the WCJ ... **we conclude that the WCJ erred by not addressing the issue of job availability. Consequently, we vacate and remand the order of the Board with the direction that it be further remanded to the WCJ for findings consistent with this opinion.**" *Montgomery Hospital*, 793 A.2d at 189 (emphasis added).

■ In the case *sub judice*, a similar situation occurred. The WCJ did not address the issue of whether the light-duty job was offered to Claimant and actually available to him or whether Claimant responded to any job offer in good faith despite evidence presented by Employer in this regard. Then, on appeal, the Board, while not citing *Vista*, applied its reasoning in concluding that Claimant failed to sustain his burden of proving ongoing disability by presenting medical evidence that he could not perform the light-duty job. However, this was in error. Certainly, there was testimony presented about the light-duty job, but the WCJ failed to make a determination as to whether the light-duty job was actually available. In fact,

the WCJ failed to make any credibility determinations regarding Ms. Fad's testimony that a light-duty job was available to Claimant which he refused to perform. The WCJ also failed to make any findings as to whether this light-duty job is within Claimant's physical restrictions. Also, although the WCJ accepted as credible the testimony of Dr. Steinhouse that Claimant sustained a work-related injury, he failed to make a finding as to whether that injury is disabling and results in a corresponding loss of earning power. These are necessary findings that must be made before the burden of proof shifts to Claimant and any conclusion can be reached about whether Claimant responded to any job offer in good faith. Additionally, these findings must be made by the WCJ rather than the Board. Therefore, in accordance with our decision in *Montgomery Hospital,* the order of the Board is vacated and this case is remanded to the Board for further remand to the WCJ for findings consistent with this opinion.[3]

■ In its brief, Employer also argues that the WCJ has issued findings with regard to Claimant's average weekly wage that are inconsistent with the evidence presented. In Finding of Fact No. 1 of his October 4, 1995 opinion, the WCJ found that Claimant had an average weekly wage of $676.85. On appeal, the Board issued a decision remanding this case to the WCJ to allow the parties to submit evidence regarding Claimant's average weekly wage. Before the Board vacated its decision and granted reargument, Claimant's attorney submitted an affidavit with

Claimant's signature to the WCJ which states that his average weekly wage was $496.00 per week. However, in Finding of Fact No. 1 of the November 27, 2000 opinion which is the subject of this appeal, the WCJ found that Claimant's average weekly wage was $676.85. On remand, we also direct the WCJ to resolve this inconsistency and make findings with regard to Claimant's average weekly wage.

■ Finally, we note that Employer also petitioned for review of the Board's order. However, because Employer was not aggrieved by the Board's decision, this Court quashed Employer's appeal without prejudice to allow Employer to raise alternative grounds for affirming the Board in this appeal. It its brief, Employer asserts that the Board should be affirmed because Dr. Steinhouse was not competent to testify. In support of this assertion, Employer submitted to the WCJ on remand the reports of a clinical and forensic psychologist and two psychiatrists that were prepared in connection with Dr. Steinhouse's criminal case, apparently in an attempt to mitigate her punishment. The reports indicate that, for the past ten to fifteen years, Dr. Steinhouse has been suffering from a mental illness that significantly impaired her judgment. However, there is no indication that the WCJ ever considered this evidence because it does not appear in the list of exhibits which precede the opinion, the WCJ did not make any findings of fact regarding this evidence nor is this evidence included in the Certified Record submitted to this Court.[4] Therefore, it is

---

3. We also note that, if a Penalty Petition is granted, the claimant is entitled to a penalty of up to 50% of the compensation benefits awarded. Because we remand this case for new findings, there is not yet a valid determination as to Claimant's entitlement to compensation benefits. Thus, is would be premature for this Court to address Claim-

ant's argument that the WCJ erred by denying the Penalty Petition.

4. This evidence does appear in the Reproduced Record. However, this Court may only consider evidence in the Reproduced Record that also appears in the Certified Record. *See Commonwealth v. Bracalielly,* 540 Pa. 460,

impossible for this Court to consider Employer's argument. On remand, we also instruct the WCJ to consider this evidence and make corresponding findings of fact.

### ORDER

AND NOW, June 27, 2002, the order of the Workers' Compensation Appeal Board docketed at A00-3283 and dated November 13, 2001 is hereby VACATED and this case is REMANDED to the Board for further remand to the WCJ for findings consistent with the foregoing opinion.

Jurisdiction relinquished.

475, 658 A.2d 755, 763 (1995) ("It is a well settled principle that appellate courts may only consider facts which have been duly certified in the record on appeal ... only facts which appear in official record may be considered by a court ... An item does not become part of the certified record by simply copying it and including it in the reproduced record." (citations omitted)). *See also* Pa. R.A.P.1926.