# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eddystone Borough,             :
           Petitioner     :
                     :   Nos. 655-656 C.D. 2015
           v.         :
                     :   Submitted: October 9, 2015
Workers' Compensation Appeal  :
Board (Conner),            :
           Respondent    :

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge[1]
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE JAMES GARDNER COLINS, Senior Judge

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                  FILED: January 29, 2016

Eddystone Borough (Employer) petitions for review of the March 24, 2015 orders of the Workers' Compensation Appeal Board (Board), insofar as they reversed the decision of a workers' compensation judge (WCJ) granting Employer's termination petition.[2]

---

[1] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] The WCJ and the Board also addressed a number of petitions filed by William Conner (Claimant) in separate but identical decisions. Specifically, the Board affirmed the WCJ's decisions insofar as they granted a claim petition filed by Claimant for a November 3, 2010 work injury, denied and dismissed Claimant's claim petition for an August 8, 2012 work injury, and denied and dismissed Claimant's review and reinstatement petitions relating to the November 3, 2010 work injury. However, these rulings are not challenged on appeal.

Employer employed Claimant as a police officer/chief of police. In the course and scope of his employment on November 3, 2010, Claimant sustained an injury to his right knee when he fell exiting his patrol vehicle. Employer issued a notice of compensation payable (NCP) accepting liability for a right knee strain and sprain. Employer later stipulated that Claimant also sustained an injury in the nature of a low back strain during this incident. On January 23, 2012, Claimant returned to part-time work with Employer and his benefits were modified to partial disability. (WCJ's Finding of Fact No. 1.)

On August 8, 2012, Claimant slipped and fell after tripping over a bundle of newspapers at work. Claimant alleged new injuries to his back, which required surgery, and his left knee. Employer issued a notice of compensation denial, and on September 13, 2012, Claimant filed a claim petition with respect to these new injuries. Less than one week later, on September 19, 2012, Claimant filed three additional petitions, including a second claim petition alleging that he sustained injuries to his right leg, including a medial meniscus tear, and low back on November 3, 2010; a review petition seeking to add the right leg/medial meniscus tear and low back injuries to the original NCP; and a reinstatement petition alleging a worsening of his original right knee condition. Employer filed answers denying the material allegations of these petitions, but noting that it had previously accepted liability for a low back injury as part of the original NCP. (WCJ's Findings of Fact Nos. 7-9, 11.)

On October 12, 2012, Employer filed a termination petition alleging that Claimant had fully recovered from his 2010 work injuries. This petition followed an independent medical examination (IME) of Claimant performed by John Nolan, M.D., on August 10, 2012, and the issuance of a notice of ability to return to work. Claimant filed an answer denying that he was fully recovered. Claimant's second claim petition, his review and reinstatement petitions, and Employer's termination

2

petition were docketed under a second claim number, and all of the petitions were consolidated for purposes of hearings before the WCJ. (WCJ's Finding of Fact No. 10.)

At a November 5, 2012 hearing, Claimant testified that he had been employed with Employer for thirty-three years and had served as Police Chief since 2006. Claimant discussed a prior work injury involving a meniscus tear and low back problems from which he had fully recovered as of November 2006. He stated that he did not miss any time from work between 2006 and 2010. Claimant recounted the incident on November 3, 2010, when he slipped and fell on a work trip to the post office, resulting in injuries to his right knee and low back. He eventually underwent a total right knee replacement in October 2011 and ultimately returned to work in January 2012. (WCJ's Findings of Fact Nos. 14-15.)

Claimant testified that he worked part-time with no problems until August 8, 2012, when he tripped over a bundle of newspapers on the floor at work. Claimant stated that he twisted his back but was able to continue working. Claimant acknowledged that he did not inform Dr. Nolan during the August 10, 2012 IME of any back problems or lower back pain, explaining that he was seeing Dr. Nolan because of the 2010 work injury and that he was busy at work at that time. Claimant said that the pain in his back continued to worsen and on August 15, 2012, he was taken by ambulance from his home to the hospital for emergency treatment. Claimant testified that he ultimately had surgery on his low back. Claimant stated that he had not worked for Employer since that date and that he continues to suffer from numbness in his left leg and radiating pain from his lower back into his left leg and knee. (WCJ's Findings of Fact Nos. 16-19.)

On cross-examination, Claimant admitted that he first informed Employer of the August 2012 incident by memo to the Borough Manager dated

3

August 20, 2012. Although Claimant was at the injury care center on August 8 and 13, 2012, he could not recall if he mentioned the August 8 incident during either of these visits. Likewise, Claimant could not recall mentioning this incident to emergency room staff on August 15, 2012. (WCJ's Findings of Fact Nos. 20-21.)

Claimant also testified by way of deposition on April 11, 2013. Claimant stated that he was under the care of William Ingram, D.O., whom he sees three days a week for continued pain and numbness in his right knee, lower back, and left leg. Claimant noted that he takes medication for the pain and that since his knee and back surgeries, he is able to walk and bend over. Nevertheless, because of the continued pain and numbness, Claimant did not believe that he could return to work. (WCJ's Findings of Fact Nos. 22-23.)

In support of his petitions, Claimant presented the deposition testimony of Dr. Ingram, who is board-certified in family practice. Dr. Ingram testified that he first saw Claimant on June 3, 2011, at which time he diagnosed Claimant as suffering from a medial meniscus tear in his right knee, traumatic lumbosacral radiculopathy with possible disc herniation, and a lumbosacral strain and sprain. Dr. Ingram opined that Claimant's diagnoses were directly related to the November 3, 2010 work incident. Dr. Ingram noted that upon Claimant's return to part-time work, following his knee replacement surgery, he was still having problems with his right knee as well as his low back. (WCJ's Finding of Fact No. 26.)

Dr. Ingram testified that he first discussed the August 8, 2012 incident with Claimant on October 26, 2012. Dr. Ingram explained that he stopped seeing Claimant for a period of two months, starting in mid-August 2012, while Claimant underwent treatment and surgery for his low back problems. Dr. Ingram noted that this surgery was performed on August 29, 2012, and that Claimant complained of increased back pain during his October 26, 2012 examination. Dr. Ingram stated that

4

he continues to treat Claimant for his low back problems. Dr. Ingram diagnosed Claimant as suffering a new disc herniation at L3-L4 and an aggravation of a pre-existing disc herniation at L4-L5, both of which required surgical intervention. Dr. Ingram opined that Claimant's diagnoses were directly related to the August 8, 2012 work incident. (WCJ's Findings of Fact Nos. 27, 30.)

In opposition to Claimant's petitions and in support of its termination petition, Employer presented the deposition testimony of Dr. Nolan. Dr. Nolan testified that he examined Claimant on two occasions. During the first exam on August 10, 2012, Dr. Nolan obtained a history from Claimant regarding his work injuries and his subsequent treatments, including his knee replacement surgery. Dr. Nolan stated that Claimant advised him that he had not completely recovered from his right knee replacement surgery, that his left knee and back problems continued, and that he was still being treated for these conditions. Dr. Nolan did not believe that Claimant's knee replacement surgery was related to the November 3, 2010 work incident; instead, Dr. Nolan opined that this surgery resulted from Claimant's longstanding bone-on-bone arthritis. Dr. Nolan noted that, during the August 10, 2012 examination, Claimant never advised him of the work incident that occurred just two days prior or any problems relating thereto. Following this examination, Dr. Nolan opined that Claimant had fully recovered from his November 3, 2010 work injuries. (WCJ's Findings of Fact Nos. 32-33.)

Dr. Nolan testified that, during a second exam on December 19, 2012, Claimant advised him of the August 8, 2012 work incident, his continuing back problems, and his ultimate back surgery. Dr. Nolan stated that his review of Claimant's medical records did not reveal this incident and that he did not believe any injury was sustained on that date. Nevertheless, as a result of Claimant's recent back surgery, Dr. Nolan noted that he filled out a physical capacity form that included

several restrictions on Claimant's activities. Following another physical examination, Dr. Nolan reiterated his previous opinion that Claimant had fully recovered from his original, November 3, 2010 work injuries. (WCJ's Finding of Fact. No. 35.)

Employer also submitted two surveillance videos, depicting Claimant's activities on six different days in March and April of 2013. These videos showed Claimant walking normally and performing other activities of daily living, such as driving his car, bending, and lifting and carrying items. Claimant did not challenge the accuracy of these videos, but he reiterated that he was not fully recovered and still experiences pain in his lower back and legs. (WCJ's Findings of Fact Nos. 22-23, 43.)

The WCJ issued two identical decisions granting Claimant's claim petition alleging a right-leg, medial meniscus tear and low back strain suffered on November 3, 2010; denying Claimant's claim petition alleging an August 8, 2012 injury; denying Claimant's review and reinstatement petitions; and granting Employer's termination petition, effective August 10, 2012. In rendering these decisions, the WCJ rejected Claimant's testimony that he suffered a work-related injury on August 8, 2012, as not credible, citing Claimant's demeanor during his testimony, his failure to report such injury to Dr. Ingram or to Dr. Nolan during the IME two days later, and the lack of any notation of the injury in his August 15, 2012 emergency room records. The WCJ also rejected Claimant's testimony that he suffered additional injuries beyond a low back strain and right knee meniscus tear during the November 3, 2010 work incident as not credible. Similarly, the WCJ rejected the testimony of Dr. Ingram as not credible or persuasive. The WCJ noted that Dr. Ingram's records were devoid of any mention of an August 8, 2012 work incident until October 26, 2012, and that he first saw Claimant in June 2011, more than seven months after his original work injuries. The WCJ accepted the contrary

6

testimony of Dr. Nolan as credible and persuasive, noting that his opinions were supported by diagnostic studies as well as the surveillance videos.

Claimant filed separate appeals with the Board. The Board issued decisions which reversed the WCJ's decisions insofar as she granted Employer's termination petition. The Board affirmed the WCJ's decision in all other respects. The Board explained that the opinion of Employer's medical expert, Dr. Nolan, regarding full recovery, as well as the notice of ability to return to work executed by Dr. Nolan, only addressed Claimant's right knee sprain, ankle sprain, and lumbosacral strain injuries, but did not address Claimant's right knee medial meniscus tear injury, even though he acknowledged such an injury during his deposition. Because Dr. Nolan never specifically opined that Claimant had fully recovered from his right knee meniscus tear, the Board concluded that Dr. Nolan's opinion could not support a termination of benefits. Employer thereafter filed separate petitions for review with this Court.[3]

On appeal to this Court,[4] Employer first argues that the Board erred in considering the "torn meniscus/termination issue" because Claimant never raised this issue in his appeal to the Board and, hence, it was waived. (Employer brief at 14.) We disagree.

Section 111.11(a)(2) of the Board's regulations requires the party appealing a WCJ's decision and order to provide the Board with an appeal form

---

[3] These petitions were docketed at Nos. 655 and 656 C.D. 2015, respectively. By order dated June 23, 2015, this Court consolidated the petitions for disposition.

[4] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether findings of fact were supported by substantial evidence. *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006).

7

containing a "statement of the particular grounds upon which the appeal is based, including reference to the specific findings of fact which are challenged and the errors of law which are alleged." 34 Pa. Code §111.11(a)(2). The regulation further cautions that "[g]eneral allegations which do not specifically bring to the attention of the Board the issues decided are insufficient." *Id.* Indeed, we have previously held that issues not properly raised on appeal to the Board are waived. *Williams v. Workmen's Compensation Appeal Board (Green Construction Co.)*, 687 A.2d 428, 430 (Pa. Cmwlth. 1997).

The Board's appeal form is divided into two sections. The first section addresses challenged findings of fact and the second section addresses purported errors of law. In his appeals to the Board, Claimant included the following, identical statement under both sections:

> Administrative Law Judge committed Errors of Law and Abuse of Discretion in conclusions of law findings 1-7 and in describing/interpreting finding of facts 25-55; Overwhelming evidence was submitted that Claimant did sustain a total knee replacement and lumbar surgery due to two distinct injuries on 11/3/2010 and 8/10/2012; The Court made an inappropriate credibility determination of the Claimant placing an inordinate amount of emphasis on Claimant performing his daily activities. In that regard, the evidence clearly establishes that the Claimant was injured, had two surgeries, was undergoing therapy, and could not return to work during the time stated; Further, the Claimant's physician was in a superior position to establish the above; The Judge's evaluation of medical records was incorrect and misstated in light of the overwhelming evidence presented by Claimant and his physician.

(Reproduced Record (R.R.) at 243, 246.)[5]

---

[5] Employer's reproduced record does not include the lower case "a" as required by Rule 2173 of the Pennsylvania Rules of Appellate Procedure.

Both Employer and Claimant rely on *Jonathan Sheppard Stables v. Workers' Compensation Appeal Board (Wyatt)*, 739 A.2d 1084 (Pa. Cmwlth. 1999), for support. In that case, the WCJ granted a claim petition for total disability benefits and also for specific loss benefits due to disfigurement. The employer appealed to the Board. On the appeal form, the employer listed the numbers of the findings of fact and conclusions of law it was challenging, but did not include a written statement of alleged errors. The Board ultimately affirmed the WCJ's decision. The employer filed a petition for review with this Court, raising the following claims:

> (1) the WCJ exceeded the scope of the Board's remand order by allowing the admission of new testimony;

> (2) the WCJ erred as a matter of law in determining that Claimant was in the course of his employment at the time of the accident;

> (3) the WCJ erred in awarding specific loss benefits due to disfigurement as Employer was not notified of the claim within 120 days after the accident;

> (4) the WCJ's determination that Claimant was in the course of his employment at the time of the accident is not supported by substantial evidence; and

> (5) the WCJ's award of specific loss benefits due to disfigurement for the scar on Claimant's neck is not supported by substantial evidence.

*Id.* at 1087.

Ultimately, we held that the employer had not properly preserved the first three claims for our review. In this regard, we explained that the employer had "utterly failed to raise any of the foregoing claims of error with any degree of specificity in its appeal to the Board" in violation of 34 Pa. Code §111.11(a)(2). *Id.* at 1089. As a result, we concluded that these claims had been waived and would not

9

be considered on appeal. However, we noted that the remaining claims raised by the employer related to whether the WCJ's findings were supported by substantial evidence, namely the findings that the claimant was in the course of his employment at the time of the accident and whether the claimant was entitled to an award of specific loss benefits due to disfigurement because of a scar on the claimant's neck. We held that the employer's appeal form, which listed the numbers of the findings of fact relating to these remaining claims, was sufficient to properly preserve these claims for our review.

In the present case, Claimant's appeal form specifically challenged Findings of Fact Nos. 25-55 and Conclusions of Law Nos. 1-7, which referenced Dr. Nolan's opinion that Claimant had fully recovered from his November 3, 2010 work injuries, the WCJ's acceptance of Dr. Nolan's testimony as credible and persuasive, and the WCJ's conclusion that Employer had met its burden of proof sufficient to support a termination of benefits. Claimant's appeal form also included a written paragraph wherein he alleged that his work-related injuries had not resolved, that he continues to undergo therapy as a result of these injuries, and that he could not return to work. If the simple listing of the numbers of the challenged findings of fact was sufficient to preserve certain claims in *Jonathan Sheppard Stables*, then certainly a similar listing here accompanied by Claimant's written statement was sufficient to preserve Claimant's challenge that Dr. Nolan's testimony was inadequate to support the grant of Employer's termination petition. *See also Morris v. Workers' Compensation Appeal Board (Ball Corp.)* (Pa. Cmwlth., No. 1172 C.D. 2014, filed June 11, 2015).[6]

---

[6] In our unpublished decision in *Morris*, the claimant filed a claim petition alleging that his job duties caused him to suffer both physical and psychological injuries. The employer denied the allegations. Following hearings, the WCJ granted the claim petition and awarded total disability
**(Footnote continued on next page…)**

10

Next, Employer argues that the Board erred as a matter of law in reversing the WCJ's grant of its termination petition. More specifically, Employer argues that substantial evidence supported the WCJ's decision and that any issue regarding the torn meniscus was moot as a result of Claimant's total knee replacement. We agree.

Generally, an employer seeking to terminate workers' compensation benefits bears the burden of proving either that the employee's disability has ceased or that any current disability arises from a cause unrelated to the employee's work injury. *Campbell v. Workers' Compensation Appeal Board (Antietam Valley Animal Hospital)*, 705 A.2d 503, 506-07 (Pa. Cmwlth. 1998). Termination is proper where the WCJ credits the testimony of the employer's medical expert, who testifies unequivocally that within a reasonable degree of medical certainty, the employee is fully recovered and can return to work without restrictions and that there are no objective medical findings that either substantiate the complaints of pain or connect

---

**(continued…)**

benefits. The employer appealed to the Board, which reversed the WCJ's decision, concluding that the claimant failed to provide the employer with proper notice of his physical injuries and failed to establish that his psychological injury was caused by abnormal working conditions. The claimant then filed a petition for review with this Court. The claimant alleged that he provided the employer with the statutorily required notice of his physical work injuries and that he was not required to show abnormal working conditions in order to prevail on his claim for a psychological injury.

Alternatively, the claimant alleged that the employer had waived the issue of abnormal working conditions by failing to raise it in its appeal to the Board. We rejected this alternative argument by the claimant, noting that the employer's appeal form listed the challenged findings of fact and conclusions of law by number, which included the WCJ's acceptance of the testimony of the claimant's doctor as credible, the WCJ's finding that the claimant's work caused his psychological injury, and the WCJ's conclusion that the claimant had met his burden of establishing a work-related psychological injury. Additionally, we noted that the employer included a written statement on its appeal form stating that the claimant "failed to meet his burden of proving he sustained a mental injury." *Id.*, slip op. at 17. We held that the employer's appeal form was sufficient to preserve the issue of whether the claimant suffered a work-related psychological injury.

11

them to the work injury. *Udvari v. Workmen's Compensation Appeal Board (US Air, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997). Moreover, where a WCJ expands the description of an injury to include additional injuries during the course of a termination proceeding, a termination of benefits is not proper where the employer's medical expert does not address these additional injuries in the expert's opinion of full recovery. *See*, *e.g.*, *City of Philadelphia v. Workers' Compensation Appeal Board (Smith)*, 946 A.2d 130 (Pa. Cmwlth. 2008), *appeal denied*, 980 A.2d 609 (Pa. 2009) (holding that the WCJ did not err in amending the NCP to include additional work injuries and in denying the employer's termination petition because the claimant was not fully recovered from those injuries).

There is no dispute that Claimant sustained a work-related injury in the nature of a right knee meniscus tear as a result of the November 3, 2010 incident at work. Indeed, the WCJ specifically found that Claimant's original work injuries included a "right knee meniscal tear" as well as a "low back strain." (WCJ's Finding of Fact No. 51.) The WCJ ultimately granted Claimant's claim petition insofar as he alleged such injuries and Employer did not challenge that aspect of the WCJ's decision in its appeal to the Board. Additionally, while Dr. Nolan acknowledged the meniscus tear injury in the scope of his deposition testimony, he never stated that Claimant had fully recovered from the same. Likewise, he did not reference the meniscus tear in his affidavit of full recovery; rather, this affidavit only recognized sprains of Claimant's ankle, knee, and lumbosacral spine.[7] *See* R.R. at 89. Under the standards set forth above, it would appear that the Board was correct in holding that the testimony of Dr. Nolan could not support a termination of benefits.

---

[7] In its brief, Employer asserts that "[s]ubsumed within the 'sprain' was the meniscus, as is medically consistent." (Employer's brief at 32.) However, Employer cites no testimony, including that of Dr. Nolan, or other authority in support of this assertion.

However, in October of 2011, nearly a year before his first IME by Dr. Nolan, Claimant underwent a total right knee replacement surgery, which the WCJ specifically found was unrelated to any work injury. There is no dispute that this surgery included removal of the meniscus in Claimant's right knee. While Claimant suggests that his knee replacement surgery makes full recovery impossible, we agree with Employer that the surgery moots any issues relating to the meniscus tear injury. Consequently, there was no need for Dr. Nolan to render an opinion of full recovery as to that injury. Moreover, Dr. Nolan opined that any ongoing disability with respect to Claimant's right knee was the result of the non-work-related knee replacement surgery. The WCJ accepted Dr. Nolan's testimony as credible and persuasive. This testimony was sufficient to meet Employer's burden of proof and the Board erred in concluding that it could not support a termination of benefits.

Accordingly, the orders of the Board, insofar as they reversed the WCJ's orders granting Employer's termination petition effective August 10, 2012, are reversed.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eddystone Borough,                :
         Petitioner          :
                           :  Nos. 655-656 C.D. 2015
     v.                  :
                           :
Workers' Compensation Appeal   :
Board (Conner),              :
         Respondent      :

## *ORDER*

AND NOW, this 29th day of January, 2016, the orders of the Workers' Compensation Appeal Board, dated March 24, 2015, insofar as they reversed the orders of the Workers' Compensation Judge granting the termination petition filed by Eddystone Borough, are hereby reversed.

_____
PATRICIA A. McCULLOUGH, Judge