**CITY OF PHILADELPHIA, Petitioner**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (SMITH), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 26, 2007.

Decided Jan. 4, 2008.

Reargument En Banc Denied Feb. 28, 2008.

Ordered Published April 25, 2008.

Martin G. Malloy, Philadelphia, for petitioner.

Daniel F. Ashton, Philadelphia, for respondent.

BEFORE: SMITH–RIBNER, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

The City of Philadelphia (Employer) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) denying both its termination petition and petition to review a utilization review determination (UR petition), on remand from this Court. In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that Eddie Smith (Claimant) proved that his work-related injuries exceeded what had been listed on the Notice of Compensation Pay-

able (NCP) and that Employer failed to prove that Claimant was fully recovered from the injuries on the corrected NCP. In this appeal, we consider whether the Board erred by allowing amendments to the NCP and whether the WCJ exceeded the scope of our remand order. Finding no error, we affirm.

On February 28, 1998, Claimant, an industrial plant electrician in Employer's water department, sustained a work-related back injury while lifting an I-beam.[1] Employer issued an "Amended Notice of Compensation Payable" dated February 12, 1999, describing the injury as a "lower back strain" and providing for payment of total disability benefits as of June 30, 1998. Reproduced Record at 1a.[2] On October 12, 1998, Employer filed a termination petition alleging that Claimant had fully recovered as of September 17, 1998. Employer also filed a UR petition concerning all treatment provided to Claimant by Mark Avart, D.O.

In support of its petitions, Employer presented the testimony of William Bonner, M.D., who is board-certified in physical medicine and rehabilitation and is one of Employer's panel physicians. Dr. Bonner initially examined Claimant on July 7, 1998, at which time Claimant reported diffuse low back pain and radiating pain in his lower extremities. However, Dr. Bonner detected some symptom magnification

and exaggerated pain responses upon examination. On July 14, 1998, Dr. Bonner performed an EMG because of Claimant's subjective pain complaints, but the EMG was normal with no signs of nerve impairment or radiculopathy. Dr. Bonner discharged Claimant from his care on September 2, 1998. Dr. Bonner opined that Claimant's lumbar strain had resolved and he needed no work restrictions due to his work injury. Based on a March 19, 1998, MRI report, Dr. Bonner opined that Claimant suffers from pre-existing degenerative joint disease, i.e., spondylolysis at L5–S1 which was present from birth and spondylolisthesis at L5–S1[3] from abnormal wear and tear, which was at grade 1, meaning minimal. However, these conditions were not related to the work incident, according to Dr. Bonner.

Employer also presented the testimony of I. Howard Levin, M.D., a board-certified neurologist, who conducted a "second opinion examination" of Claimant on September 17, 1998.[4] Dr. Levin testified by deposition on December 3, 1998. Dr. Levin took a history from Claimant and noted that he was complaining of low back pain along with shooting pain and tingling down both legs. Dr. Levin performed a physical examination that did not reveal any objective evidence of a physical or neurologic impairment. Claimant did exhibit some inappropriate findings, i.e., findings not

---

1. Claimant's job was to maintain electrical equipment.

2. There is no original NCP contained in the reproduced record or, for that matter, in the certified record. Neither party offers an explanation as to why the NCP is not in the record, in violation of the requirement in 34 Pa.Code § 131.52(f) that the parties are to provide the WCJ with "all documents required by law to be filed with the Bureau and which are relevant to issues in dispute with the same injury date," which the WCJ is to then place into evidence.

3. "Spondylolysis" is defined as "[d]egeneration or deficient development of a portion of the vertebra." STEDMAN'S MEDICAL DICTIONARY at 1678 (27th ed.2000). "Spondylolisthesis" is defined as "[f]orward movement of the body of one of the lower lumbar vertebrae on the vertebra below it, or upon the sacrum." Id.

4. Dr. Levin examined Claimant at Dr. Bonner's request.

caused by a real problem, such as give away weakness in his lower extremities and complaints of lower back pain when the doctor pressed down on the top of his head. Claimant's straight leg raising and sitting root tests were negative for any sciatic or radicular symptoms.

Dr. Levin reviewed an MRI film from March 19, 1998, which showed evidence of spondylosis [5] and spondylolysis, *i.e.*, a slight misalignment in the spine, which is a longstanding, pre-existing condition. Dr. Levin also interpreted the MRI as showing a small, right-sided disc protrusion at the L5–S1 level, with no frank herniation or extrusion and no nerve compression. Dr. Levin did not believe that anything in the MRI accounted for the symptoms Claimant was reporting. Dr. Levin also noted that the EMG and nerve conduction study performed by Dr. Bonner on July 14, 1998, were normal. Dr. Levin found no objective evidence to substantiate Claimant's subjective complaints. He opined that Claimant was fully recovered from his February 1998 work injury and capable of returning to his prior job without restrictions.

With regard to Employer's UR petition, Dr. Levin again testified on February 12, 2001. Dr. Levin reviewed medical records and opined that Dr. Avart's treatment of Claimant was neither reasonable nor necessary. Dr. Levin pointed out that Dr. Avart began treating Claimant after the date that Dr. Levin believed Claimant had already fully recovered. Dr. Levin disagreed with Dr. Avart's use of oral steroids, back supports, traction, narcotic medications and trigger point injections, and he felt that the use of injections was inconsistent with a referral for surgery. Dr. Lev-

in also opined that the surgery performed by Evan O'Brien, M.D. was neither reasonable nor necessary because Claimant did not display objective signs of impairment, and his discogram was negative.

Claimant testified on his own behalf. With regard to the February 1998 incident, he testified that as he was lifting an I-beam at work, he felt a pop in his lower back and immediately experienced back pain. He went to the emergency room where he was treated with an injection, medication and a cane for walking. The next business day, Claimant went to the workers' compensation clinic for an examination, and the day after that, Claimant returned to a light-duty job involving paperwork.[6] However, he had too much pain in his back and legs, and stopped working as of June 15, 1998. Claimant has seen numerous doctors but testified that he continues to experience constant lower back pain that travels through both legs to his heels. He also has problems with his legs giving out. Claimant testified that he could not return to his pre-injury job because it is heavy work involving a good deal of climbing and crawling. Claimant explained that he previously had some back injuries, but he was not having any back trouble prior to February 28, 1998, and he had no problem performing his full-duty job without restrictions. Claimant began treating with Dr. Avart in November 1998, receiving steroid injections and medications, and they have helped. He also testified again after undergoing back surgery in April 2000, explaining that the surgery helped his leg problems, but he continues to have pain and cannot return to his regular job.

---

5. "Spondylosis" is a term that is "often applied nonspecifically to any lesion of the spine of a degenerative nature." STEDMAN'S MEDICAL DICTIONARY at 1678 (27th ed.2000).

6. Employer presented testimony from Frank Gola and Lawrence Philyaw regarding Claimant's light-duty assignment.

Claimant presented the testimony of Dr. Avart, a board-certified orthopedic surgeon. Dr. Avart first saw Claimant on November 2, 1998, for his back pain and leg pain, tingling, numbness and weakness. Upon physical examination, Dr. Avart saw evidence of back spasm in the nature of mild sciatic scoliosis, meaning that the spine goes into spasm away from an inflamed nerve. He also found evidence of trigger points, which are a collection of spasms in the lumbar and sacroiliac regions. Claimant also had a positive straight leg raising test, indicating a nerve problem. Dr. Avart reviewed lumbar x-rays from the date of the injury which showed spondylolysis at L-5 with minimal slippage on L5–S1. An MRI of March 19, 1998, revealed small central and right-sided disc herniations at L5–S1. Dr. Avart diagnosed Claimant with herniated lumbar discs at L5, S1 and S2, and lumbar radiculopathy.

In order to confirm whether there was nerve damage present, Dr. Avart referred Claimant to Michael Cohen, M.D. for an EMG that was performed on November 9, 1998. The EMG revealed ongoing lumbosacral radiculopathy at L-5, caused by the February 28, 1998, work injury. Dr. Avart acknowledged that the July 14, 1998, EMG performed by Dr. Bonner was normal. However, Dr. Avart explained that the mechanism of Claimant's injury was a stretch injury to the nerve, and that type of injury does not appear on a test until the nerve actually begins to heal or scar, which can take months. That is why Claimant's July EMG appeared normal but the November EMG showed active ongoing nerve damage that was in the acute stage.[7]

Dr. Avart noted that Claimant's complaints have been consistent throughout the time Dr. Avart has been treating him. Dr. Avart opined within a reasonable degree of medical certainty that Claimant's February 28, 1998, work incident caused post-traumatic lumbar radiculopathy and two herniated discs at L5–S1, and that Claimant has not recovered and cannot return to his pre-injury job.

Claimant also presented the testimony of Dr. O'Brien, a board-certified orthopedic surgeon with additional training in spine surgery, who first examined Claimant on November 18, 1999, on referral from Dr. Avart. Dr. O'Brien sent Claimant for a December 13, 1999, MRI which revealed a small protruding disc at L5–S1 and pre-existing problems in the L5–S1 area such as a pars defect and slippage of the L5 vertebra on S1. Dr. O'Brien opined that Claimant sustained a "substantial injury" at work in February 1998 that caused a loose fragment in his back, necessitating surgery. On March 3, 2000, Dr. O'Brien performed a discogram at L3–4 and L4–5 in order to determine whether those discs needed to be repaired with surgery, but they were normal. The L5–S1 disc was not tested because it was already known to be causing pain. On April 7, 2000, Dr. O'Brien performed stabilization surgery at L5–S1.

Dr. O'Brien agreed with Dr. Avart's diagnosis of herniated disc at L5–S1 and lumbar radiculopathy. Dr. O'Brien opined that the work incident also caused unstable spondylolisthesis with bilateral pars defects and intractable back pain. Dr. O'Brien reviewed Dr. Avart's course of treatment, including anti-inflammatory medication, oral steroids, injections and physical therapy, and opined that it was reasonable and necessary care for Claimant's work injury. Dr. O'Brien also re-

---

7. Dr. Avart specified that Claimant's herniated discs were not pressing on the nerve; rather, the nerve was damaged when it was stretched during the work incident.

viewed Dr. Levin's reports and disagreed with Dr. Levin's opinions, noting that Dr. Levin is not an expert in orthopedic spine surgery.

The WCJ issued a decision and order denying Employer's termination and UR petitions. The WCJ credited the testimony of Claimant, Dr. Avart and Dr. O'Brien, and rejected the testimony of Dr. Levin and Dr. Bonner. Based on his credibility determinations, the WCJ concluded that Employer failed to meet its burden of proving that Claimant fully recovered from his work injury as of September 17, 1998, or that Dr. Avart's treatment was neither reasonable nor necessary. WCJ Decision, 5/23/03, at 10–11; Conclusions of Law 2, 5. Employer appealed, and the Board affirmed.

On appeal to this Court, we vacated and remanded the matter for further proceedings. We explained that we could not undertake effective appellate review because the WCJ's credibility determinations did not meet the requirements found in *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 574 Pa. 61, 828 A.2d 1043 (2003).[8] We noted that the WCJ's decision pre-dated our Supreme Court's decision in *Daniels* and we instructed the WCJ, on remand, to explain his reasons for his credibility determinations. *City of Philadelphia v. Workers' Compensation Appeal Board (Smith)*, 860 A.2d 215, 223–224 (Pa.Cmwlth.2004).

We also discussed the fact that the testimony of Claimant's medical experts did not relate to the injury accepted in the NCP, *i.e.*, a back strain. We pointed out that the only petitions before the WCJ were termination and UR petitions filed by Employer, and that Claimant had not filed a review petition or claim petition. Further, the WCJ had made no specific conclusion that Claimant met his burden of proving that his herniated discs and lumbar radiculopathy were caused by the February 1998 work incident, or that the NCP issued by Employer was materially incorrect. Rather, the WCJ simply concluded that Employer did not meet its burden of proving full recovery.

■ No new evidence was submitted on remand. On March 7, 2006, the WCJ issued a new decision again denying Employer's termination and UR petitions. The WCJ specifically discussed Dr. Avart's testimony and gave his reasons for finding Dr. Avart credible.[9] The WCJ found that, based on Dr. Avart's credible testimony, Claimant established that the NCP was materially incorrect at the time it was issued. The WCJ accordingly amended the NCP to include "post traumatic lumbar radiculopathy and two herniated discs at L5–S1" as part of the original work injury. WCJ Remand Decision, 3/7/06, at 3, Finding of Fact 15. On appeal, the Board affirmed. Employer then petitioned for this Courts review.[10]

---

8. There, our Supreme Court held:
   [A]bsent the circumstance where a credibility assessment may be said to have been tied to the inherently subjective circumstance of witness demeanor, some articulation of the actual objective basis for the credibility determination must be offered for the decision to be a "reasoned" one which facilitates effective appellate review. *Daniels*, 574 Pa. at 78, 828 A.2d at 1053.

9. The WCJ has complete authority over questions of credibility, conflicting medical evidence and evidentiary weight. *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.)*, 666 A.2d 383, 385 (Pa. Cmwlth.1995).

10. This Court's scope and standard of review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *City of Philadelphia v.*

On appeal, Employer presents several issues for our consideration. First, Employer contends that the WCJ improperly concluded that Employer failed to meet its burden of proving that Claimant fully recovered from the accepted work injury. Second, Employer argues that the WCJ erred in denying Employer's termination petition based on an injury that was not the injury accepted by Employer on the NCP. Third, Employer argues that the WCJ erred in denying Employer's UR petition where the subject medical treatment was neither reasonable nor necessary and Employer met its burden of proving that Claimant had fully recovered from his work injury. Finally, Employer argues that the WCJ erred by rendering findings of fact and conclusions of law regarding issues that were outside the scope of remand.

■ We begin with Employer's first two arguments, which are as follows.[11] First, Employer argues that its termination petition should have been granted because its medical experts testified that Claimant fully recovered from his lumbar strain, which is the only injury listed on the NCP.[12] Employer points out that Claimant's medical experts did not even render an opinion regarding the accepted work injury, and argues that the opinions of Claimant's doctors are incompetent because they are based on injuries not included in the NCP. Second, Employer argues that the WCJ erred in considering injuries not listed on the NCP and using those injuries as the basis to deny the termination petition. Employer contends that Claimant was required to file a review petition in order to change the description of the work injury to anything other than a back strain.

Claimant counters that under the law, the WCJ is authorized to add injuries to the NCP where the claimant's evidence establishes that he sustained additional injuries at the time of the original work incident. The WCJ may do so in a proceeding on a termination petition, even if the claimant has not filed a petition of his own. Further, Claimant asserts that the evidence supports the WCJ's amendment of the NCP to include additional injuries and his denial of the termination petition. We agree with Claimant.

The situation presented in this case is similar to that found in the recent case of *Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 932 A.2d 346 (Pa.Cmwlth.2007). There, the employer issued an NCP acknowledging a "lumbar strain/sprain." The WCJ denied the employer's termination petition and amended the NCP, concluding that the claimant proved that his work injury included a herniated disc. The employer argued on appeal that the WCJ erred in amending the NCP when the claimant had not filed a review petition, and that the claimant's doctor's testimony was incompetent because he failed to acknowledge that the work injury was limited to a lumbar strain/sprain.

This Court noted that under Section 413(a) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as*

*Workers' Compensation Appeal Board (Brown)*, 830 A.2d 649, 653 n. 2 (Pa.Cmwlth.2003).

11. We have combined Employer's first two arguments because they are interrelated.

12. In a termination proceeding, the employer bears the burden of proving that the claimant fully recovered from his work injury and has no remaining disability, or that any remaining disability is no longer related to the work injury. *Campbell v. Workers' Compensation Appeal Board (Antietam Valley Animal Hospital)*, 705 A.2d 503, 506–507 (Pa.Cmwlth. 1998).

*amended,* 77 P.S. § 771, a WCJ is empowered to amend the description of the claimant's work injury if it is proved that the NCP is materially incorrect.[13] We explained that the "NCP is materially incorrect if the accepted injury fails to include all of the injuries that the claimant suffered in the work incident." *Id.* at 349. Because the record contained evidence to support the finding that the claimant sustained a herniated lumbar disc as a result of his work injury, we held that the WCJ did not err in expanding the description of the work injury and denying the employer's termination petition. *Id.*

In the case *sub judice,* only Employer's petitions were before the WCJ, and Claimant admittedly did not file a review petition. However, like the claimant in *Hill,* Claimant proved through the credible testimony of Dr. Avart that he sustained herniated discs and lumbar radiculopathy from a stretch injury to a nerve, both of which occurred in the February 1998 work incident.[14] Dr. Avart relied on the mechanism of Claimant's work injury; the March 1998 MRI which showed herniated discs; and on the November 1998 EMG, which showed that the damaged nerve was heal-ing or scarring. This is also corroborated by Claimant's credible testimony that his back "popped" in the incident and he subsequently experienced back and leg pain. As such, the NCP was materially incorrect when issued.[15] Contrary to Employer's argument, Claimant was not required to file a review petition, and the WCJ did not err in considering evidence that Claimant's work incident caused more injuries than a lumbar strain. In short, the WCJ did not err in amending the NCP to include additional work injuries and in denying the termination petition because Claimant was not fully recovered from those injuries.

■ We now turn to Employer's next argument, which is that its UR petition should have been granted because the subject medical treatment was neither reasonable nor necessary, according to Dr. Levin. Employer further argues that it met its burden of proving that Claimant had fully recovered from his work injury as of September 17, 1998; therefore, any medical treatment rendered after that date, including all of Dr. Avart's treatment, could not be reasonable or necessary.

■ It is well-settled that the employer has the never-shifting burden throughout

---

13. The first paragraph of Section 413(a) provides in relevant part:

> A workers' compensation judge of the department may, *at any time,* review and modify or set aside a notice of compensation payable ... or upon petition filed by either party with the department, *or in the course of proceedings under any petition pending before such workers' compensation judge,* if it be proved that such notice of compensation payable ... was in any material respect incorrect.

77 P.S. § 771 (emphasis added).

14. As long as the WCJ's findings are supported by substantial, competent evidence, they may not be disturbed on appeal. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck),* 664 A.2d 703, 706 (Pa. Cmwlth.1995). It is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.),* 721 A.2d 1152, 1155 (Pa.Cmwlth.1998).

15. As noted, the record contains only an amended NCP from 1999. However, in their briefs, Employer and Claimant both mention an NCP being issued on June 11, 1998. This NCP was materially incorrect because it did not list all injuries sustained in the February 1998 work incident. Further, the February 1999 amended NCP, which again listed the injury as a lower back strain, was materially incorrect and was issued well after Claimant's nerve damage became visible on the November 1998 EMG.

the UR process of proving that the challenged medical treatment is unreasonable or unnecessary. *Topps Chewing Gum v. Workers' Compensation Appeal Board (Wickizer)*, 710 A.2d 1256, 1261 (Pa. Cmwlth.1998). Although Dr. Levin did opine that the treatment was neither reasonable nor necessary, his testimony was not accepted as credible in this case. In addition, as we discussed earlier, Employer was not able to prove that Claimant was fully recovered from his work injury as of September 17, 1998. Accordingly, Employer failed to meet its burden of proving that Dr. Avart's treatment was neither reasonable nor necessary, and the WCJ properly denied the UR petition.

We now turn to Employers final issue. Employer argues that on remand, the WCJ issued findings of fact and conclusions of law that were outside the scope of this Courts remand order. Specifically, Employer contends that the WCJ erred in again adding lumbar radiculopathy and herniated discs to the NCP when there was no material mistake of fact at the time the NCP was executed. Employer asserts that this Court already held that this constituted error on the WCJs part and we did not remand for such findings. We disagree.

The reason for our remand was our determination that the WCJs credibility findings were insufficient under *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 574 Pa. 61, 828 A.2d 1043 (2003), which requires a WCJ to give objective reasons for his credibility determinations with respect to witnesses that do not testify live before the WCJ, so that we can undertake meaningful appellate review. We expressed concern that the accepted injury was a lower back strain and Claimant had not filed a petition to amend the NCP in this case. We also noted that, as far as proving that the NCP was mate-rially incorrect when issued, the July 1998 EMG failed to reveal any evidence of nerve damage according to Dr. Avart's own testimony. However, nothing in our opinion prohibited the WCJ from amending the NCP and again denying Employer's petitions.

On remand, the WCJ clarified Dr. Avart's testimony and specified that he was accepting as credible Dr. Avart's opinion that the NCP was materially incorrect when issued because Claimants work incident caused herniated discs and a stretch injury to the nerve that was not visible on an EMG until healing or scarring began to occur, several months after the work incident. The WCJ also pointed out that Claimant was complaining of radiating pain in his legs when he first saw Dr. Bonner. The WCJ gave his reasons for finding Dr. Avart credible and, based on his testimony, amended the NCP and denied Employers petitions. This is not outside the scope of our instructions on remand and, further, is consistent with the outcome in *Hill*. No error was committed.

For these reasons, the Board's order is affirmed.

**ORDER**

AND NOW, this 4th day of January, 2008, the order of the Workers' Compensation Appeal Board dated March 23, 2007, in the above captioned matter is hereby AFFIRMED.