Abdullah Heard,             :
           Petitioner       :
                                   :
      v.                         :
                                   :
Workers' Compensation Appeal Board   :
(Philadelphia Parking Authority),       :    No. 767 C.D. 2020
            Respondent      :    Submitted: October 30, 2020

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE P. KEVIN BROBSON, Judge[1]
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON          FILED: February 17, 2021

Abdullah Heard (Claimant) petitions for review of the order of the Workers' Compensation Appeal Board (Board) dated July 14, 2020, affirming the decision and order of a Workers' Compensation Judge (WCJ) granting Claimant's Claim Petition in part and concluding the Philadelphia Parking Authority's (Employer's) contest was reasonable. Upon review, we affirm.

## I. Factual Background and Medical Evidence

Claimant worked for Employer as a parking enforcement officer walking an assigned route and issuing parking tickets. WCJ Opinion, 6/12/19 (WCJ Op.), at 4. On January 9, 2018, while walking his route, Claimant slipped and fell

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Brobson became President Judge.

on ice on a sidewalk. *Id.* He had several past injuries to his left shoulder, arm, leg, and hip, as well as to his back, but he was not under treatment or in pain regarding his past injuries when he fell on January 9, 2018. *Id.* He promptly reported the slip and fall to Employer but did not immediately seek medical treatment. *Id.* A few weeks later, on January 24, 2018, he saw a panel physician, who released him to work with restrictions, but Claimant ultimately did not return to work after January 24, 2018.[2] *Id.* at 5.

On January 31, 2018, Employer issued a Notice of Compensation Denial disputing that any work-related injury occurred. Reproduced Record (R.R.) at 2a-3a. Claimant filed a Claim Petition on March 28, 2018, seeking partial disability benefits from the date of injury through January 24, 2018, and total disability benefits from January 24, 2018 forward. *Id.* at 7a-9a. As of November 5, 2018, when he testified before the WCJ, Claimant stated that he did not feel fully recovered or able to resume his work duties. WCJ Op. at 4.

### A. Claimant's Medical Evidence

Claimant's treating provider, Nirav Patel, D.C., a chiropractor (Claimant's Medical Expert), testified by deposition on July 24, 2018. At Claimant's first visit on February 2, 2018, Claimant's Medical Expert diagnosed Claimant with sprain and strain injuries to the left shoulder and hip and cervical and lumbar spine areas due to the January 2018 fall. R.R. at 100a. After magnetic resonance images (MRIs) were taken, Claimant's Medical Expert revised his diagnoses to cervical sprain and strain and disc bulge, lumbar sprain and strain and

---

[2] Employer subsequently terminated Claimant's employment in April 2018 based on an unrelated incident that occurred on January 2, 2018, a week prior to his fall, when after a verbal encounter with a vehicle owner, Claimant rescinded a ticket in violation of Employer's policies. WCJ Opinion, 6/12/19 (WCJ Op.), at 4.

2

herniation, left shoulder sprain and strain and rotator cuff tendonitis, and left hip sprain and strain and femoral acetabular impingement with chondromalacia. *Id.* at 109a. Claimant's Medical Expert did not feel that Claimant's prior injuries were relevant to his condition at the time of diagnosis, because Claimant reported that he was not in pain at the time he fell in January 2018. *Id.* at 95a-96a, 109a & 161a. A lumbar discogram was planned to assess whether surgical intervention would be needed. *Id.* at 110a & 144a.

### B. Employer's Medical Evidence

Employer presented medical evidence from Jeffrey Malumed, M.D., an orthopedic surgeon (Employer's Medical Expert), who testified by deposition on November 19, 2018. R.R. at 257a. Employer's Medical Expert saw Claimant on September 10, 2018, for an independent medical evaluation (IME). *Id.* at 267a. When he saw Claimant for the IME, Employer's Medical Expert had only the reports of Claimant's various diagnostic imaging tests, but not the actual films and images. *Id.* at 280a. He indicated he prefers to see actual films and images, but often relies on reports alone when films are not provided or not available when he conducts an IME. *Id.* at 327a & 332a-33a. He did not recall whether he spoke with Employer's counsel about getting the MRI films, but stated that if he was given the opportunity to see the films, he would have accepted. *Id.* at 333a.

Relevant to our review, Employer's Medical Expert noted that in the reports from lumbar MRIs taken after Claimant's fall, in March and June of 2018, a radiologist interpreted a disc herniation at L4-5 impinging on the thecal sac and a disc bulge at L5-6. R.R. at 282a. Neither of the 2018 MRI reports indicated the

3

radiologist had compared the results with earlier lumbar MRIs from 2013 and 2014. *Id*. at 299a-300a.

Employer's Medical Expert noted Claimant's history of back injuries and issues going back to 2007. R.R. at 283a. Claimant had undergone a lumbar MRI for a work-related injury in 2013 that showed a disc protrusion at L4-5 and a disc bulge at L5-S1. *Id*. at 284a & 298a. In 2014, Claimant underwent another lumbar MRI at a lower intensity strength than the 2013 MRI; the 2014 MRI was reported as relatively normal "with just some mild scoliosis." *Id*. at 284a-85a & 298a. Employer's Medical Expert's examination of Claimant revealed objective abnormalities of the lumbar spine, including ongoing limited range of motion, a "mildly positive sitting root sign, left side," and a "questionably positive straight leg raising sign on the left side."[3] *Id*. at 290a & 292a.

Based on the records available at the time of the IME, Claimant's report of his history, and the physical examination, Employer's Medical Expert initially attributed to the January 2018 fall a hip contusion, cervical sprain and strain, and left shoulder contusion or sprain (all of which had resolved prior to the IME) and lumbar findings described in the 2018 MRI report that constituted changes from the previous MRI in 2014 and were ongoing. R.R. at 292a-97a. At the time of the IME, Employer's Medical Expert opined that the lumbar issues required additional treatment and restriction to sedentary work. *Id*. at 297a.

After the September 2018 IME and the preparation of his initial report, however, Employer's Medical Expert received the actual film images of the four lumbar MRIs from 2013, 2014, and March and June of 2018. R.R. at 302a. On November 15, 2018, shortly before his deposition, Employer's Medical Expert

---

[3] The sitting root and straight leg raise tests are used to detect sciatic or radicular symptoms. *See City of Phila. v. Workers' Comp. Appeal Bd. (Smith)*, 946 A.2d 130, 132 (Pa. Cmwlth. 2008).

completed an addendum report. *Id*. at 301a. That report indicated that after reviewing the images themselves, Employer's Medical Expert disagreed with the radiologist's report that the 2014 lumbar MRI was normal compared to the 2013 report, which had shown a disc protrusion at L4-5 and a disc bulge at L5-S1. *Id*. at 304a. Based on his personal review of the MRIs, Employer's Medical Expert opined that the images from 2014 and 2018 showed similar abnormalities to those in the 2013 images. *Id.* He, therefore, concluded that no positive, acute, or significant changes occurred as a result of the January 2018 incident. *Id*. Thus, in the opinion of Employer's Medical Expert, the 2018 incident did not cause any structural damage such as an aggravation or exacerbation of Claimant's preexisting lumbar conditions. *Id*. at 304a-06a. Moreover, the 2018 images did not show a herniation at L4-5, but rather, only the same protrusion that had been present at L4-5 since at least the time of the 2013 MRI. *Id*. at 311a.[4]

Employer's Medical Expert concluded from his review of the actual MRI films that Claimant sustained only a sprain or strain injury from the January 2018 incident, which had resolved before the September 2018 IME. R.R. at 306a. Employer's Medical Expert opined that the ongoing back conditions he detected in his IME were the result of Claimant's preexisting and longstanding back issues and not the January 2018 incident. *Id*. Because Claimant had been working full duty with his preexisting back conditions before the January 2018 fall, Employer's Medical Expert opined that, as of the September 2018 IME, Claimant could resume full-duty work, as the sprain or strain injury had resolved by then. *Id*. at 307a, 334a.

---

[4] Employer's Medical Expert distinguished between a herniation, where the disc material herniates through the posterior longitudinal ligament, and a protrusion, where the material pushes the posterior longitudinal ligament outwards. Reproduced Record (R.R.) at 341a.

Employer's Medical Expert explained that he changed his initial opinion solely because after the IME, during which he had only the MRI reports of the interpreting radiologists, he was able to view personally the actual lumbar MRI films, and his interpretations of the films differed from those of the radiologists. R.R. at 335a-37a. His understanding was that he was the only doctor who had been able to view all four MRI films. *Id.* at 336a. Employer's Medical Expert disagreed with the diagnoses of Claimant's Medical Expert to the extent that those diagnoses relied on the previously available MRI reports. *Id*. at 312a-13a.

## II. Procedural History

At the initial hearing on May 4, 2018, the WCJ directed that Claimant's deposition and the deposition of Claimant's Medical Expert were to be completed by the next hearing in 90 days. R.R. at 19a-20a. The WCJ also instructed Employer's counsel not to "sit on" the IME report from Employer's Medical Expert once it became available, and to provide the report to Claimant in a timely manner. *Id*. The WCJ stated another hearing would be held in 90 days to check on the status of the matter. *Id*. at 20a-21a.

At the second hearing on August 15, 2018, the WCJ noted that the Claimant's deposition and Claimant's Medical Expert's deposition had been completed and instructed that Employer had 90 days to depose Employer's Medical Expert before a final hearing. Certified Record Item #13 (Hearing Transcript, 8/15/18). Claimant's counsel did not raise any issues or challenges to the timeliness with which Employer was proceeding on its evidentiary case, including the fact that Employer had not yet obtained an IME of Claimant. *See id.* at 3.

6

On September 17, 2018, a week after Employer's Medical Expert's IME, Claimant's counsel wrote a letter to Employer's counsel refusing, in advance, to accede to any delays or continuances in completing the evidentiary record. R.R. at 178a. In the letter, Claimant's counsel asserted that the IME was conducted late, because it occurred after Claimant's Medical Expert testified, so Claimant's Medical Expert did not have the IME report available to refute during his deposition; counsel contended that this hampered Claimant's ability to present rebuttal evidence of disability beyond the IME date. *Id.* Claimant's counsel protested that Employer's Medical Expert's deposition had not yet been scheduled and that the delay was causing Claimant personal distress as he continued to be injured without either income or benefits. *Id.*

On October 18, 2018, Employer's counsel provided the initial IME report of Employer's Medical Expert. R.R. at 180a. On October 22, 2018, Employer sought a continuance of the final hearing scheduled on November 5, 2018, so that it could obtain multiple additional records from past providers, specifically including the 2013 and 2014 MRI films, for Employer's Medical Expert to review before his deposition; Employer stated that it had not previously been able to obtain these records because Claimant had not previously identified the providers at issue in order that Employer could prepare subpoenas for them. *Id.* at 191a. Claimant's counsel objected, accusing Employer – without evidentiary support – of requesting the continuance in bad faith as a "stall tactic" in order to "conduct surveillance, in the hope of finding a 'smoking gun' sufficient to cause [Employer's Medical Expert] to change his opinion." *Id.* at 181a-90a.

The next hearing, originally scheduled as the last hearing, was held on the originally scheduled date, November 5, 2018. R.R. at 199a. After noting that

7

Employer had not secured its IME in a timely manner in accordance with the WCJ's original schedule, the WCJ gave Employer 30 additional days to conduct the deposition of Employer's Medical Expert. *Id.* at 204a. Claimant did not object to that extension. *See id.* Nonetheless, on January 8, 2019, one day before the final hearing, Claimant's counsel filed a request to preclude the testimony of Employer's Medical Expert,[5] on the basis that Employer had not complied with the WCJ's *original* schedule for presenting its evidence. *Id.* at 482a-84a. Claimant's counsel asserted that Employer's delay was in bad faith because Employer's Medical Expert did not recall specifically asking for additional time to review the MRI films and images; therefore, according to Claimant's counsel, the reason Employer's counsel gave the WCJ for seeking a continuance after the September 2018 IME, *i.e.*, a "request" from Employer's Medical Expert, was "a **complete fabrication by counsel** [for Employer]." *Id.* at 483a-84a (emphasis in original).

Notwithstanding this accusation by Claimant's counsel, extended discussions, both during the deposition of Employer's Medical Expert and before the WCJ, confirmed that Employer's Medical Expert preferred reviewing the MRI films rather than reports, and while the volume of his practice prevented him from recalling a specific discussion with Employer's counsel requesting the actual films, he did not dispute that such a discussion occurred. For example, the following colloquy took place during redirect examination by Employer's counsel during the deposition of Employer's Medical Expert:

> Q.     Doctor, do you recall a conversation that we may have had following the issuance of your report?

---

[5] Claimant's counsel also sought to preclude certain fact testimony, not at issue here, concerning Employer's termination of Claimant's employment.

A.      Honestly, I don't.  But I would not remember a conversation like that.  I, unfortunately, not only do I see 110 patients in the average week, I talk to numerous people on the phone all the time.

So I don't remember a conversation and I don't mark down conversations that I have on the telephone.  I mean, we certainly could have had a conversation, I just don't remember.

Q.      Okay, so you don't remember if you told me you didn't see the films and would like to look at the films?

A.      What I would normally state to you, if I had a conversation with you, yes, I would love to look at the films.

So, if we did have that conversation, which I have no reason to believe we didn't have that conversation, but if you would ask me, would you rather look at the films and would that help you with your ability to diagnose what's going on and what's preexisting, what's not?  I would always say yes, I would like to look at those films if they are available for me to review. . . .

R.R. at 332a-33a.

As summarized in Section I.B above, Employer's Medical Expert testified in a November 19, 2018, deposition in which he explained that he initially found Claimant sustained an ongoing structural lumbar injury as a result of the January 2018 incident, but upon viewing and comparing the 2013 and 2014 lumbar MRI films with those taken after the incident in January 2018, Employer's Medical Expert altered his original conclusion and opined that Claimant sustained only a lumbar sprain and strain in January 2018, from which he had recovered by the September 2018 IME.  R.R. at 296a, 302a-06a, 317a-18a & 335a-36a.

On June 19, 2019, the WCJ issued a decision and order granting the Claim Petition in part.  The WCJ determined Claimant sustained a work-related

9

injury in the January 2018 fall and was totally disabled until September 10, 2018, at which point Claimant was fully recovered from his January 2018 injuries and his entitlement to WC benefits terminated. WCJ Op. at 10 & 13. The WCJ also concluded Employer's contest of the Claim Petition was reasonable. *Id*. at 10-11 & 13. Relevant here, the WCJ found Employer's Medical Expert more credible than Claimant and Claimant's Medical Expert where there were conflicts in the testimony. *Id.* at 9. The WCJ expressly credited the testimony of Employer's Medical Expert that his reason for changing his opinion concerning the cause of Claimant's back condition was his review of the MRI films after he issued his initial written report. *Id.* at 8-10. Specifically, the WCJ found:

> [Employer's Medical Expert's] opinions regarding [the] relationship between Claimant's injuries, and their extent and duration, to the work injury were cogent, clear, and convincing. [Employer's Medical Expert's] opinions and diagnoses are well-founded in his physical examination findings and diagnostic studies, which he credibly explained. While this [WCJ] understands that [Employer's Medical Expert] seemingly altered his opinion regarding causation and extent of Claimant's low back injury, such position change is understandable and credible given Claimant's extensive prior history of injuries.

*Id.* at 9-10.

Claimant appealed the WCJ's decision to the Board. On July 14, 2020, the Board issued an opinion and order. In its opinion, the Board thoroughly reviewed the evidence as set forth in the WCJ's decision. *See* Board Opinion, 7/14/20 (Bd. Op.), at 3-8. The Board rejected Claimant's argument that the WCJ failed to explain his credibility determination concerning the reason Employer's Medical Expert altered his medical opinion regarding causation, observing that Employer's Medical

Expert submitted his addendum report explaining his change of opinion "after receiving additional information concerning Claimant's lower back condition prior to the work injury. . . ." *Id.* at 10. The Board concluded the opinion of Employer's Medical Expert, as accepted by the WCJ, "therefore constitute[d] substantial evidence sufficient to support the WCJ's finding that Claimant fully recovered from his January 9, 2018 work injury by the day he was examined by [Employer's Medical Expert] on September 10, 2018." *Id.*

The Board likewise rejected Claimant's argument that the WCJ erred in granting Employer's request for an extension of time to depose Employer's Medical Expert. Observing that waiver of rules and admission of evidence are matters within the sound discretion of the WCJ, the Board opined:

> Determining whether a claimant would be prejudiced by an extension of time for the employer to submit evidence involves asking whether the objecting party has been rendered incapable of responding to such evidence, such as the case where a witness has died or evidence has been lost. . . . The fact that a claimant's ability to win its case is hurt by admission of the evidence is not what is meant by prejudice in this context.

Bd. Op. at 10-11 (citing *Atkins v. Workers' Comp. Appeal Bd. (Stapley in Germantown)*, 735 A.2d 196 (Pa. Cmwlth. 1999)) (internal citations omitted). The Board found the WCJ did not abuse his discretion in admitting the deposition testimony of Employer's Medical Expert, stating that "[o]ther than arguing that such evidence hurt its case, Claimant offers no explanation as to how that evidence could not have been rebutted." *Id.* at 11. Accordingly, the Board affirmed the WCJ's decision. *Id.* at 13.

11

Claimant then petitioned for review in this Court.[6]

### III. Issues

On appeal, Claimant claims error in the WCJ's management of the schedule for the underlying litigation, the WCJ's admission of the testimony of Employer's Medical Expert and related credibility determinations, and the WCJ's finding that Employer's contest of the Claim Petition was reasonable.[7] Specifically, Claimant argues the WCJ abused his discretion and prejudiced Claimant by failing to enforce applicable rules and the WCJ's original schedule[8] regarding the deposition of Employer's Medical Expert. Further, according to Claimant, the opinion of Employer's Medical Expert was not competent or unequivocal because he altered his original opinion, and the WCJ should not have credited his testimony. Claimant also insists the WCJ's decision disregarded overwhelming evidence in Claimant's favor, without providing an explanation in the decision. Claimant requests a remand to allow him to respond to the evidence of Employer's Medical Expert that Claimant contends was submitted late, and to allow Claimant to offer evidence concerning surgery Claimant underwent after the record was closed. Finally, Claimant posits

---

[6] Our review of the Board's decision is limited to determining whether relevant findings of fact are supported by substantial evidence, whether errors of law were committed, or whether constitutional rights of a party were violated. *See White v. Workers' Comp. Appeal Bd. (City of Phila.)*, 237 A.3d 1225, 1227 n.7 (Pa. Cmwlth. 2020). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a determination. *Pocono Mountain Sch. Dist. v. Workers' Comp. Appeal Bd. (Easterling)*, 113 A.3d 909, 918 (Pa. Cmwlth. 2015). In reviewing a WCJ's opinion, this Court views all evidence in the light most favorable to the prevailing party and draws all reasonable inferences in that party's favor. *Id.*

[7] Claimant also asserted arguments relating to a cross-petition for review by Employer. However, although Claimant evidently received service of a cross-petition, Employer never filed it, so the issues raised therein are not before this Court.

[8] Although Claimant asserts various rule violations, ultimately only the WCJ's extension of the deadline for the deposition of Employer's Medical Expert is material here.

12

that once corrected as he requests, the record will demonstrate that Employer engaged in an unreasonable contest of the claim.

We address Claimant's various arguments in turn.

## IV. Discussion

### A. Extensions of Time and Resulting Prejudice

Claimant first argues that the WCJ abused his discretion and prejudiced Claimant by granting Employer's request for an extension of time, and that the Board failed to detect that abuse and resulting prejudice because it did not review the complete record. We discern no merit in this argument.

Claimant essentially argues that in scheduling the deposition of Claimant's Medical Expert, Claimant relied on the WCJ's scheduling directive at the initial hearing. Claimant asserts he further relied on the WCJ's indications at the final hearing that in future evidentiary rulings, he would preclude evidence not submitted in compliance with his orders. Br. of Pet'r at 18 (citing R.R. at 584a-85a). Claimant reasons that if the WCJ had not granted Employer an extension so that Employer's Medical Expert could be deposed after reviewing the actual MRI films and his deposition could be admitted in evidence after the original final hearing date, Employer's Medical Expert would not have been able to alter his original medical opinion. According to Claimant, he was prejudiced by conducting his own expert's deposition before Employer's Medical Expert changed his opinion.

Claimant apparently acknowledges that he could have requested an extension of time to rebut the altered opinion of Employer's Medical Expert; however, he made no such request.[9] *See* R.R. at 624a; Br. of Pet'r at 22, 24, 31 &

---

[9] At the conclusion of the final hearing, the WCJ specifically asked, "Can I close the record now?" R.R. at 624a. Counsel for *both* parties said, "Yes." *Id.*

13

40. Now, Claimant contends (without record evidence) that obtaining rebuttal evidence would have taken five months and cost over $4,000. Br. of Pet'r at 31. Claimant thus implies that he decided not to seek an extension for rebuttal evidence because of the time and money it would have required. However, Claimant's own decision to forgo seeking an extension does not constitute prejudice as the result of any error by the WCJ.

The record also does not offer any support for Claimant's averment that he relied on the WCJ's scheduling instruction and intimations concerning future evidentiary rulings. Moreover, any such reliance was not reasonable. First, Employer timely conducted and submitted the deposition of Employer's Medical Expert within the 30-day extension period granted by the WCJ; therefore, the WCJ's comment that he would preclude noncompliant evidence was inapplicable and could not reasonably support an assumption by Claimant that the WCJ would subsequently preclude the deposition.

Additionally, Claimant expressly and repeatedly states that he anticipated Employer would request extensions of time, and he was prepared for such requests. *See* Br. of Pet'r at 7 ("09/17/18 Letter to [Employer] – No Continuances. Issue expected."), 8 ("10/18/18 Claimant prepares Objection to *EXPECTED* continuance request."), 13 ("Claimant expressly advised [Employer] he expected them [sic] to delay litigation while trying to get a new opinion – and began preparing an objection even before a continuance was requested.") (emphases in original).

Further, Claimant acknowledges the WCJ had discretion to grant extensions. Claimant contends that any extension required good cause; however, without knowing in advance what grounds Employer might have for potential

14

extension requests, Claimant could not reasonably rely on his assumption that the WCJ would deny any extension request. Thus, Claimant could not reasonably have relied on an assumption that the WCJ's original scheduling order would not change.

Claimant repeatedly avers that in compliance with the original scheduling order, he completed preparation of his own case, including the deposition of Claimant's Medical Expert, even before Employer scheduled an IME of Claimant by Employer's Medical Expert. *See, e.g.*, Br. of Pet'r at 28. If Claimant believed he was entitled to more information concerning Employer's case before deposing Claimant's Medical Expert, in order to rebut Employer's medical evidence, then Claimant could have requested an extension of time to complete the presentation of his own medical evidence. However, Claimant did not object to completing preparation and submission of his medical evidence before the IME took place. He will not now be heard to complain of prejudice arising from a *change* in the opinion of Employer's Medical Expert, when the entirety of Claimant's medical evidence was submitted even before the IME was conducted and before *any* opinion of Employer's Medical Expert was known to Claimant.

We also reject Claimant's implicit assertion that Employer's request for an extension of time for Employer's Medical Expert to consider additional medical evidence was improper. Claimant stresses a perceived discrepancy in the record. Employer asserted it was seeking an extension because Employer's Medical Expert wanted to review the MRI films; somewhat in contrast, Employer's Medical Expert testified that he did not recall making that request, although he would have answered in the affirmative if asked whether he wanted to review the films. *See* R.R. at 191a & 332a-33a. However, as discussed above, any inconsistency is minor. Moreover, whether the request for the MRI films was initiated by Employer or Employer's

15

Medical Expert is immaterial to the question of whether the WCJ acted properly in granting Employer an extension to allow review of those films. If Employer believed additional evidence in the form of actual MRI films could be obtained which, if reviewed by Employer's Medical Expert, might result in a more fully-informed expert opinion, Employer was within its rights to request an extension of time for the expert's review of the MRI films. *Accord Sharkey v. Workers' Comp. Appeal Bd. (Tempo, Inc.)*, 739 A.2d 641, 644 (Pa. Cmwlth. 1999) (WCJ properly held record open upon employer's request to submit additional evidence). Claimant cites no authority to the contrary.

Further, the WCJ possessed discretion in controlling his own docket. 34 Pa. Code § 131.12(a); *U.S. Airways & Reliance Nat'l v. Workers' Comp. Appeal Bd. (McConnell)*, 870 A.2d 418, 423 & n.7 (Pa. Cmwlth. 2005) (citing *Sharkey*, 739 A.2d at 644 & n.4). If the WCJ had concluded Employer's extension request was motivated by an improper delay strategy, he had discretion to deny it. *See U.S. Airways*, 870 A.2d at 423 (WCJ properly dismissed petition due to ongoing delays caused by claimant's repeated failure to appear at hearings). Here, notwithstanding Claimant's complaints of a pattern of delays by Employer, the WCJ granted Employer an extension of only 30 days for the deposition of Employer's Medical Expert, and the record ultimately remained open for only a single additional hearing held about 60 days beyond the originally scheduled final hearing date. Claimant's suggestion of a delay strategy by Employer is unsupported by the record, and in any event is immaterial in light of the minor delay that actually resulted. The WCJ did not abuse his discretion in permitting such a delay by granting Employer a modest extension of time to submit its medical evidence. Claimant was not prejudiced by

that minor delay, for each of the reasons discussed above. The Board correctly affirmed the WCJ's decision on that issue.

## B. Credibility of Employer's Medical Expert

Next, Claimant argues that the WCJ erroneously failed to provide a rational basis for crediting the revised opinion of Employer's Medical Expert. We reject this argument. A WCJ's decision is adequately reasoned if it allows for appellate review without further elucidation. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). We conclude the WCJ's decision here is adequate for review.

The record reveals that Employer's Medical Expert based his original opinion of the cause of Claimant's medical condition in large part on reports of previous MRI films dating back to 2013, in that he did not have the actual MRI films to review. R.R. at 280a & 292a-97a. When Employer's Medical Expert later had the opportunity to review the MRI films themselves, his reading and interpretation of them differed from the reports. *Id.* at 306a.

"The WCJ is the ultimate fact[]finder and has complete authority for making all credibility determinations." *Rife v. Workers' Comp. Appeal Bd. (Whitetail Ski Co.)*, 812 A.2d 750, 755 (Pa. Cmwlth. 2002). The WCJ was entitled to credit the interpretation and opinion of Employer's Medical Expert, a board certified orthopedic surgeon, over the opinion of Claimant's Medical Expert, a chiropractor, and the written reports of MRI radiologists who were not deposed or otherwise presented before the WCJ for credibility determinations. *See, e.g.*, *Robertshaw Controls Co. v. Workers' Comp. Appeal Bd. (Raffensperger)*, 710 A.2d 1232, 1234 (Pa. Cmwlth. 1998) (the WCJ determines credibility and may accept or

reject any testimony including that of an expert medical witness; moreover, testimony of a single medical witness is a reasonable basis for the WCJ's credibility determination, despite conflicting evidence).

Notably, Employer's Medical Expert revised his opinion on the cause of Claimant's condition because his review of the MRI films revealed that the conditions in Claimant's lower back were present at least as far back as 2013, were unchanged in the subsequent MRI films, and therefore could not have resulted from the January 2018 fall. R.R. at 306a. The MRI films and Employer's Medical Expert's interpretations of them constituted substantial evidence in support of his revised opinion. Thus, there was substantial evidence to support the WCJ's credibility finding regarding the revised opinion of Employer's Medical Expert. The Board correctly affirmed the WCJ's finding.

## C. Weight of the Evidence

Claimant next asserts that the WCJ's decision was contrary to the overwhelming weight of the evidence and that the WCJ failed to provide an adequate explanation of his credibility determinations. Claimant points to the WCJ's statement that the revision of the medical opinion of Employer's Medical Expert was "understandable and credible given Claimant's extensive prior history of injuries." WCJ Op. at 9-10. Claimant contends this explanation by the WCJ was not rational because Employer's Medical Expert already had Claimant's entire medical history when forming his original opinion, and because "many of the earlier injuries involved different areas of [C]laimant's body." Br. of Pet'r at 37. We disagree.

As noted above, although Employer's Medical Expert formed his original opinion after considering his IME of Claimant and all of the medical records

18

that were provided to him at that time, he did not have Claimant's *entire* medical history, because he did not have access to the MRI films, only to reports concerning those films. The MRI films constituted a significant part of Claimant's medical history. After reviewing the MRI films themselves, Employer's Medical Expert concluded the condition of Claimant's spine, as shown in the 2018 MRI, was already present in the earlier films. Thus, the history of injuries revealed in the prior MRIs provided substantial evidence in support of the revised opinion of Employer's Medical Expert. The WCJ appropriately relied upon Claimant's history of previous injuries to support his attribution of credibility to Employer's Medical Expert. *Accord Dep't of Corr. v. Workers' Comp. Appeal Bd. (Richardson)*, 788 A.2d 1041, 1045 (Pa. Cmwlth. 2001) (WCJ properly relied on testimony of employer's medical expert as credible, where claimant provided incomplete history of prior injuries at time of expert's physical examination, but expert later received additional documentation and based his testimony on claimant's complete medical history).

In addition, although Claimant is correct in stating that he suffered many prior injuries to other parts of his body, that observation does not alter the fact that he also suffered previous back injuries; nor does it diminish the significance of the various MRI films, which are part of Claimant's medical history, and which, in the opinion of Employer's Medical Expert, showed the presence as early as 2013 of the back conditions on which Claimant based his assertion of current disability and which he claimed were the result of his January 2018 fall. Accordingly, the Board correctly concluded the WCJ's decision was supported by substantial evidence.

**D. Remand Request**

In his last two arguments, Claimant seeks a remand or rehearing based on corrections he insists are needed to the record by removing the revised opinion of Employer's Medical Expert or allowing Claimant to respond to Employer's allegedly "late" medical evidence, and by admitting "after[-]discovered" evidence of Claimant's alleged post-hearing back surgery. Br. of Pet'r at 40 & 42. Claimant also contends that these corrections to the record require reconsideration of the reasonableness of Employer's contest of the Claim Petition. Because these two requests are interrelated, we address them together. Both are without merit.

Claimant's request to remove or respond to the revised opinion of Employer's Medical Expert has been fully addressed above. As discussed, we conclude that the Board properly affirmed the WCJ's admission of and reliance on the revised opinion based on Employer's Medical Expert's review of the MRI films after completing his original report. We likewise conclude that Claimant cannot claim prejudice arising from his inability to rebut the opinion of Employer's Medical Expert, because he failed to seek an extension of time to do so before the WCJ closed the record.

Regarding his averment that Claimant subsequently underwent back surgery, and that the surgery constituted "after[-]discovered evidence," Br. of Pet'r at 40, Claimant's entire argument consists of a single sentence asserting that evidence relating to the surgery was not available at the time he completed his medical evidence. *Id.* This argument is insufficiently developed to allow meaningful review, and therefore, it has been waived. *See Dep't of Env't Prot. v. Green 'N Grow Composting, LLC*, 201 A.3d 282, 286 (Pa. Cmwlth. 2018) (argument is waived for lack of development when court is unable to conduct meaningful

20

review of it); *see also* Pa. R.A.P. 2101 (appeal may be quashed or dismissed for substantial defects in briefing). Even if this single sentence argument were sufficient, we would reject Claimant's contention because he does not explain the nature of the surgery or how it would rebut the WCJ's finding, affirmed by the Board, that the condition of Claimant's back resulted from previous injuries and not from his January 2018 fall. *Accord Bradley v. Workers' Comp. Appeal Bd. (Crucible Compaction Metals)* (Pa. Cmwlth., No. 571 C.D. 2014, filed Sept. 10, 2014), slip op. at 9, 2014 Pa. Commw. Unpub. LEXIS 553, *14 (unreported)[10] (rehearing not merited where claimant provided only bald allegations of after-discovered evidence without an offer of proof or supporting medical documentation); *UGI Corp. v. Workmen's Comp. Appeal Bd. (Wagner)*, 566 A.2d 1264, 1265 (Pa. Cmwlth. 1989) (rehearing not merited where appeal forms contained only bald and conclusory statements of after-discovered evidence, with no support by affidavit, medical documentation, or otherwise; opposing party "was entitled to have properly supported averments and an opportunity to reply thereto"). Thus, he has not shown that admission of this evidence would affect the outcome of his Claim Petition.

Moreover, we note that Claimant was aware during the course of the WCJ proceeding that surgery was contemplated, Br. of Pet'r at 7 (IME report identified possible need for surgery), 10 (as of the hearing on November 5, 2018, Claimant "was expecting to undergo surgery"), but he did not request that the record remain open for submission of additional evidence post-surgery. In fact, Claimant implies he could have completed presentation of post-surgery rebuttal evidence within five months after the record closed, and that delaying the WCJ's decision was a factor in his decision not to seek an extension of time for rebuttal evidence. *See*

---

[10] We cite this and other unreported decisions of this Court as persuasive pursuant to 210 Pa. Code § 69.414(a).

*id.* at 31. Thus, the fact that the surgery did not actually occur until later did not render it after-discovered evidence. *Accord Green v. Workers' Comp. Appeal Bd. (The Salvation Army)* (Pa. Cmwlth., No. 1259 C.D. 2018, filed July 23, 2019), slip op. at 13 & n.9, 2019 Pa. Commw. Unpub. LEXIS 418, *16 & n.9 (unreported) (Board properly denied rehearing for submission of after-discovered evidence of claimant's post-decision surgery, where WCJ had evidence prior to decision that surgery was scheduled, such that evidence of occurrence of surgery was cumulative, and where claimant agreed to closing of record although he knew surgery was planned); *Frederick v. Workers' Comp. Appeal Bd. (Toll Bros.)* (Pa. Cmwlth., No. 327 C.D. 2013, filed Aug. 6, 2013), slip op. at 7, 2013 Pa. Commw. Unpub. LEXIS 617, *10-11 (unreported) (no rehearing for after-discovered medical evidence in the form of post-hearing medical report, where claimant could have sought continuance to obtain such evidence but did not).

Finally, we reject Claimant's suggestion that the finding of a reasonable contest by Employer must be reconsidered on remand. Because we affirm the findings and conclusions underlying the determination of a reasonable contest, Claimant is not entitled to reconsideration of that issue.

## V. Conclusion

Based on the foregoing discussion, we affirm the Board's order.

_____
CHRISTINE FIZZANO CANNON, Judge

22

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Abdullah Heard,                          :
               Petitioner       :
                                 :
        v.                            :
                                 :
Workers' Compensation Appeal Board  :
(Philadelphia Parking Authority),        :   No. 767 C.D. 2020
               Respondent       :

O R D E R

AND NOW, this 17th day of February, 2021, the order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge